JERRY TARKANIAN, UNIVERSITY OF NEVADA, LAS VEGAS; DR. LEONARD GOODALL, AS PRESIDENT OF THE UNIVERSITY OF NEVADA, LAS VEGAS AND OFFICER OF THE UNIVERSITY OF NEVADA; FRANKIE SUE DEL PAPA, LILLY FONG, DOROTHY GALLAGHER, CHRIS KARAMANOS, JOAN DENNEY, DANIEL J. KLAICH, JOHN McBRIDE, JOANN SHEERIN AND JUNE WHITELY AS MEMBERS OF THE BOARD OF REGENTS OF THE UNIVERSITY OF NEVADA, APPELLANTS AND CROSS-RESPONDENTS, *v.* NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, RESPONDENT AND CROSS-APPELLANT.

No. 16256

August 27, 1987                    741 P.2d 1345

*Lionel, Sawyer & Collins* and *Mark A. Solomon,* Las Vegas for Jerry Tarkanian Appellant and Cross-Respondent.

*Jones, Jones, Close & Brown,* Las Vegas, for UNLV, et al. Appellants and Cross-Respondents.

*Beasley, Hamilton & Holden,* Reno; *David Goldwater,* Las Vegas; *Swanson, Midgley, Gangwere, Clarke & Kitchin,* Kansas City, Mo. for Respondent and Cross-Appellant.

## OPINION

*Per Curiam:*

This is the second appeal in litigation involving Jerry Tarkanian's suspension as head basketball coach at the University of Nevada–Las Vegas (UNLV). The trial court granted Tarkanian injunctive relief because of the NCAA's failure to comply with due process standards. The trial court also awarded Tarkanian attorney's fees pursuant to 42 U.S.C. § 1988. We affirm in most respects, reversing and remanding only for recomputation of attorney's fees.

### THE FACTS

The NCAA is a private, voluntary association consisting of approximately 960 public and private educational institutions. The NCAA Council, which is elected at annual conventions, is responsible for implementation and interpretation of NCAA policies. The NCAA Committee on Infractions administers the NCAA enforcement program.

UNLV is a public university existing by virtue of Article 11, Section 4 of the Nevada Constitution. Jerry Tarkanian has been a head basketball coach for nearly thirty years, at UNLV since 1973.

After a two and one-half year investigation of UNLV's basketball program, the Committee on Infractions issued to UNLV an Official Inquiry on February 25, 1976. The Official Inquiry was fifty-four pages in length and outlined seventy-two rule violations which allegedly occurred between 1970 and 1976. The Official Inquiry was later supplemented with six additional allegations.

UNLV was requested to conduct its own investigation and respond by June 1, 1976. The Nevada State Attorney General's Office conducted an extensive investigation of the allegations. The individuals named in the Official Inquiry were located, and attorney general personnel either traveled to their homes or flew them to Las Vegas for interviews.

UNLV submitted to the Committee on Infractions a response consisting of a restatement of each allegation and an explanation whether UNLV agreed that a violation occurred. UNLV also submitted two boxes of sworn statements, affidavits and other documentary evidence supporting denials of rule violations.

The Committee on Infractions considered the allegations in hearings covering approximately a three-day period. The NCAA enforcement staff's evidence consisted of the investigators' oral recollections of interviews with sources. The investigators relied on memoranda of the interviews, sometimes dictated after the interviews. The interviewees did not check the accuracy of the memoranda. With respect to the allegations against Tarkanian, UNLV affidavits and sworn statements directly controverted the testimony of the NCAA enforcement staff.

Of the seventy-eight allegations, the Committee found thirty-eight violations of NCAA rules. Tarkanian was named in ten of the violations. The Committee issued its findings in Confidential Report No. 123(47), which directed UNLV to show cause why additional penalties should not be imposed against it if it did not suspend Tarkanian from involvement with the University's Inter-collegiate Athletic Program for two years.

UNLV appealed certain findings and penalties to the NCAA Council in May, 1977, including all involving Tarkanian. The Council affirmed the findings and penalties of the Committee on August 23, 1977. In September, 1977, UNLV conducted a hearing to determine whether to follow the NCAA's directive. The hearing officer questioned the factual basis of the charges against Tarkanian, but felt UNLV had no choice but to accept the penalties in the Confidential Report. UNLV's President accepted the hearing officer's recommendation and suspended Tarkanian.

Tarkanian brought suit against UNLV in September, 1977 and obtained injunctive relief. This court reversed for failure to join a necessary party, the NCAA. University of Nevada v. Tarkanian, 95 Nev. 389, 594 P.2d 1159 (1979). Tarkanian commenced a second suit in July, 1979, against both UNLV and the NCAA. The trial court granted Tarkanian injunctive relief but denied Tarkanian's claim for attorney's fees as damages under state law. The trial court, however, did allow attorney's fees as costs pursuant to 42 U.S.C. § 1988.

## DISCUSSION

*State Action.*

The NCAA first contends that UNLV's and the NCAA's imposition of penalties against Tarkanian does not constitute state action.

Due process restrictions apply only to activities which can be characterized as state action.[1] Early cases held that NCAA regulatory activity constituted state action. *See, e.g.,* Regents of the Univ. of Minn. v. N.C.A.A., 560 F.2d 352 (8th Cir. 1977), *cert. denied,* 434 U.S. 978 (1977); Howard University v. N.C.A.A., 510 F.2d 213 (D.C.Cir. 1975); Parish v. N.C.A.A., 506 F.2d 1028 (5th Cir. 1975); Associated Students, Inc. v. N.C.A.A., 493 F.2d 1251 (9th Cir. 1974). The rationale underlying these cases was that many NCAA member institutions were either public or government supported. Rivas Tenorio v. Liga Athletica Interuniversitaria, 554, F.2d 492, 495 (1st Cir. 1977). However, the NCAA argues that a trilogy of 1982 Supreme Court decisions and cases subsequently interpreting them require a different result. We disagree.

The Supreme Court cases on which the NCAA relies are Rendell-Baker v. Kohn, 457 U.S. 830 (1982), Lugar v. Edmondson Oil Company, Inc., 457 U.S 922 (1982), and Blum v. Yaretsky, 457 U.S. 991 (1982).

In *Blum,* medicaid patients in private nursing homes challenged the decision of physicians to transfer them to lower levels of care without notice or a hearing. 457 U.S. at 1006. The Court held that due process limitations did not apply because government regulations did not dictate the decision to transfer. Rather, private physicians determined whether the patient's care was medically necessary based upon professional standards. *Id.* at 1006-08. The Court stated that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 1004. The Court further noted that mere regulation, subsidization, or acquiescence in the initiatives of a private party do not create state action. *Id.*

In *Rendell-Baker,* the Court relied upon similar reasoning to hold that a private high school for maladjusted students did not act under color of law when it discharged teachers. The Court

---

[1] The "under color of law" requirement of 42 U.S.C. § 1983 is identical to the state action requirement of the Fourteenth Amendment. Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982). The parties use both terms, but for convenience' sake, we will refer only to state action.

reached this conclusion even though the school was governmentally regulated and received most of its students by referral from public schools, and public funds had accounted for over ninety percent of its budget. 457 U.S. at 832-33.

In *Lugar,* the Court determined that a private party's joint participation with state officials in the seizure of disputed property constituted action under color of state law. The Court interpreted its cases to require "that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State." 457 U.S. at 937. This inquiry contains a two-part approach:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . . Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Id.* at 937.

Cases subsequent to *Blum, Rendell-Baker,* and *Lugar* have rejected the earlier line of cases which held that NCAA regulatory activity is state action. In Arlosoroff v. N.C.A.A., 746 F.2d 1019 (4th Cir. 1984), a Duke University tennis player challenged NCAA eligibility requirements. In holding that the state action requirement was not met, the court said that it could not be shown that state schools joined as a bloc to cause the bylaw in question to be adopted. Thus the coercive power test explained in *Blum* was not met, and the court found no state action. 746 F.2d at 1022. *Arlosoroff* specifically rejected the earlier line of cases which held that NCAA regulatory activity is state action. *Id.* at 1021. *See also* Graham v. N.C.A.A., 804 F.2d 953 (6th Cir. 1986); Ponce v. Basketball Federation, 760 F.2d 375 (1st Cir. 1985); McHale v. Cornell Univ., 620 F.Supp. 67 (N.D.N.Y. 1985).

The *Blum* trilogy and cases subsequently interpreting it do not require the result which the NCAA urges. Both *Blum* and *Rendell-Baker* recognized that state action may be present "if the private entity has exercised powers that are 'traditionally the exclusive prerogative of the state.' " *Blum,* 457 U.S. at 1005 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. at 345, 353 (1974)); *see also Rendell-Baker,* 457 U.S. at 842. UNLV is a public institution, existing by virtue of Article 11, section 4 of the Nevada Constitution. Tarkanian is therefore a public employee.

In our view, the right to discipline public employees is tradition-ally the exclusive prerogative of the state. UNLV cannot escape responsibility for disciplinary action against employees by dele-gating that duty to a private entity.

The *Arlosoroff* court held that the regulation of intercollegiate athletics is not a function traditionally exclusively reserved to the state. *See also Rendell-Baker*, 457 U.S. at 842 (while education is a public function, it has not been traditionally the exclusive function of the state). However, the facts of the instant case are distinguishable from *Arlosoroff* and other cases cited by the NCAA in that those cases concerned private schools. *See Arlo-soroff*, 746 F.2d 1019 (applicability of NCAA eligibility require-ments to Duke University tennis player); *McHale*, 620 F.Supp. 67 (applicability of NCAA eligibility requirements to Cornell University student). Graham v. National Collegiate Athletic Ass'n, 804 F.2d 953 (6th Cir. 1986), on which the NCAA relies in its supplemental points and authorities, is also distinguishable. *Graham* did not deal with the enforcement of NCAA rules against a state employee, as in the instant case.

For similar reasons, the two-part approach articulated in *Lugar* requires that we conclude state action is present. The first prong is met because no third party could impose disciplinary sanctions upon a state university employee unless the third party received the right or privilege from the university. Thus, the deprivation which Tarkanian alleges is caused by the exercise of a right or privilege created by the state. Also, in the instant case, both UNLV and the NCAA must be considered state actors. By dele-gating authority to the NCAA over athletic personnel decisions and by imposing the NCAA sanctions against Tarkanian, UNLV acted jointly with the NCAA.

### *Property or Liberty Interest.*

The protections of due process attach only to deprivations of property or liberty interests. Sullivan v. Brown, 544 F.2d 279, 282 (6th Cir. 1976). The NCAA argues that Tarkanian did not possess a constitutionally protected property or liberty interest. We disagree.

In Board of Regents v. Roth, 408 U.S. 564, 577 (1972), the Supreme Court stated that property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." A contract for employ-ment can be the basis of a property right. Stewart v. Bailey, 556 F.2d 281, 285 (5th Cir. 1977).

In our view, Tarkanian's contractual relationship with UNLV establishes a property interest in continued employment. Since July, 1973, Tarkanian had been employed under a series of one-year contracts running from July through June. His 1977-1978 contract was entitled "Tenured Professional Employment Document." This contract, which was dated June 20, 1977 and was for a term running from July 1, 1977 through June of 1978, was a continuation of an established practice between the parties. The contract granted Tarkanian tenure, thus confirming his testimony that upon arrival at UNLV he was promised tenure would be given at some time in the future. This contract was in force when UNLV suspended Tarkanian in September, 1977.

The NCAA argues that Tarkanian was not deprived of a property interest because the suspension affected only his duties as head coach. According to his 1977-1978 contract, Tarkanian held the positions of both head basketball coach and professor of physical education. Case law supports that employees do not have a property interest in a particular position. *See e.g.*, Childers v. Independent School Dist. No. 1, 676 F.2d 1338, 1341 (10th Cir. 1982); Sullivan v. Brown, 544 F.2d 279, 282 (6th Cir. 1976). Given the facts of this case, this argument is not persuasive. Tarkanian had been a head basketball coach for twenty-eight years, four at UNLV. Continued employment only as a professor of physical education would be a drastic change from his previous assignment.

We also believe that Tarkanian possessed a liberty interest protected by the due process clause. The Supreme Court defined the parameters of the due process liberty interest in *Paul v. Davis,* 424 U.S. 693, *reh'g denied,* 425 U.S. 985 (1976). In *Davis,* the Court held that in order to invoke the protections of the due process liberty interest, a plaintiff must show that a "right or status previously recognized by state law was distinctly altered or extinguished" and that his reputation was injured as a result. *Id.* at 711. This test has become known as the "stigma-plus" test, the stigma being an injury to reputation, the plus being a change in a previously recognized status. The NCAA is unpersuasive in contending that Tarkanian fails both prongs of the test.

The stigma which satisfies the "stigma-plus" test in the employment context must be such that it forecloses plaintiff's opportunity to take advantage of other employment opportunities. Altman v. Hurst, 734, F.2d 1240, 1243 (7th Cir. 1984), *cert. denied,* 469 U.S. 982 (1984); Bollow v. Federal Reserve Bank, 650 F.2d 1093, 1101 (9th Cir. 1981), *cert. denied,* 455 U.S. 948 (1982). Dismissal from employment on grounds involving immo-

rality or dishonesty satisfies the stigma prong of the stigma-plus test. Lawson v. Sheriff, 725 F.2d 1136, 1139 (7th Cir. 1984). The grounds for suspending Tarkanian satisfy this standard.[2]

The NCAA also contends that Tarkanian has not suffered a sufficient change of status. As already noted, however, even though Tarkanian would have retained employment as a professor, the NCAA's disciplinary action would have drastically altered his position. *Cf.* Hardiman v. Jefferson County Bd. of Educ., 709 F.2d 635 (11th Cir. 1983) (one week suspension without pay insufficient to invoke due process protections); Mosrie v. Barry, 718 F.2d 1151, (D.C.Cir. 1983) (lateral transfer to less desirable district insufficient to invoke due process protections). Absent judicial intervention, Tarkanian's suspension might well have ended his college coaching career.

### Due Process.

The NCAA contends that the trial court erred in finding that the manner in which Tarkanian was suspended did not afford due process of law. We disagree.

In the hearings before the Committee on Infractions, the NCAA enforcement staff presented orally the NCAA's case. The investigators' presentation consisted of their recollections of interviews with sources. The investigators relied upon notes of the interviews, sometimes dictated after the fact. Tarkanian and UNLV hotly contested virtually all of the testimony which allegedly established rule violations by Tarkanian, and they presented evidence directly contradicting the investigators' testimony, generally consisting of signed affidavits and statements from persons whom the NCAA had interviewed. In the circumstances of this case, this procedure does not comport with due process requirements.

Procedural due process requirements are flexible and vary as the particular situation demands. Mathews v. Eldridge, 424 U.S. 319, 334 (1976). In *Mathews,* the Court held that three competing interests should be balanced in determining what process is due:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such

---

[2]The NCAA's findings against Tarkanian included that (1) he arranged for a student to get a "B" grade without attending class or doing class work; (2) he attempted to impede the NCAA's investigation by discouraging individuals from providing information and encouraging individuals to provide false information; (3) he provided free airline transportation to a student-athlete; (4) he reimbursed an individual's expenses for recruiting a student-athlete; (5) he falsely certified UNLV's program as in compliance with NCAA rules; and (6) his conduct did not comport with high ethical standards.

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335.

A case on point is Stanley v. Big Eight Conference, 463 F.Supp. 920 (W.D.Mo. 1978). In *Stanley,* the plaintiff sought to enjoin the Big Eight Conference, working in cooperation with the NCAA, from conducting a hearing to determine if Oklahoma State University athletic personnel had violated rules of the Conference and the NCAA. The court granted injunctive relief.

In *Stanley,* the court noted the severe impact on coaching personnel when they are found to have violated the rules governing their activities. *Id.* at 926-27, 930. We have already discussed this point in the context of Tarkanian's liberty or property interest and will not repeat it here. We only reiterate our view that Tarkanian's suspension likely would have ended his near thirty-year career as a head coach and permanently tarnished his reputation. He no doubt possessed a significant interest in the outcome of the NCAA proceedings, an interest which cannot be taken lightly.

We next consider the nature of the fact-finding procedures employed by the NCAA. In *Stanley,* the fact-finding body intended to rely upon as evidence of wrongdoing an investigator's eighteen page report detailing interviews with approximately seventy-five people. *Id.* at 924. The court held the procedures to be unconstitutional, stating:

> Of greatest concern to the Court is that the author of the investigative report is free to draw certain inferences beyond those statements of fact made to him in his interviews.
>
> . . . .
>
> . . . Furthermore, the author of the report presents statements made to him in a fashion that may not necessarily be prejudicial or biased but may certainly be classified as not completely neutral. It is this unconscious subjective coloring of the statements that troubles the Court. Accurate findings of fact should not be made upon pre-digested information.

*Id.* at 931.

There are significant similarities between this case and *Stanley,* and we are persuaded by *Stanley's* reasoning. *Stanley* involved a substantial investigation, with seventy-five people interviewed. The NCAA's investigation of Tarkanian and UNLV spanned

approximately a two and one-half year period and resulted in fifty-eight pages of typed material detailing seventy-eight allegations of infractions. Also, in *Stanley,* the plaintiff denied the allegations pertaining to him. In the instant case, Tarkanian not only denied the allegations, he produced numerous sworn statements directly contradicting the testimony of the NCAA's investigators. In these circumstances, basing findings of fact upon pre-digested information creates serious due process problems. The lengthy and far-reaching scope of the NCAA's investigation in this case creates the danger that the enforcement staff may not remember the precise nature of interviews. This increases the likelihood that investigators, no matter how pure their intentions, will gloss their testimony with an "unconscious subjective coloring." Also, despite the NCAA's desire to make the investigation a cooperative effort, the proceedings obviously became adversarial. Again, this enhances the likelihood that pre-digested information will be presented in a fashion favorable to the investigator-witness's position. As the court noted in *Stanley,* "[f]ew investigative reports can be written in a totally objective manner void of the author's subjective attitudes." *Id.* at 931 n.4.

Alternative procedures for protecting Tarkanian's interest are available. At a minimum the NCAA should be required to produce written affidavits of persons interviewed by the enforcement staff. This would attenuate the problem of a "subjective coloring" of the facts.

*Attorney's fees.*

The NCAA next argues that the trial court erred in awarding attorney's fees pursuant to 42 U.S.C. § 1988 (1982). Section 1988 allows the court in its discretion to award a party prevailing in a 42 U.S.C. § 1983 (1982) action a reasonable attorney's fee as a part of the costs. The NCAA argues that Tarkanian pleaded only in his complaint violations of the Fourteenth Amendment, without mentioning § 1983, and therefore cannot recover attorney's fees pursuant to § 1988. We disagree.

A cause of action under § 1983 requires an allegation that someone deprived the plaintiff of a federal right under color of state law. Gomez v. Toledo, 446 U.S. 635, 638 (1980). Tarkanian's complaint met these criteria, even though his complaint did not mention § 1983. This is a sufficient basis for obtaining attorney's fees. *See* Kirchberg v. Feenstra, 708 F.2d 991, 1000 (5th Cir. 1983); Harradine v. Board of Supervisors, 425 N.Y.S.2d 182, 188 (App.Div. 1980) (plaintiff may recover attorney's fees pursuant to § 1988 in a state court action which does

not allege violation of § 1983, but seeks to enforce federal rights).

The NCAA also contends that the trial court erred by awarding attorney's fees for claims upon which Tarkanian did not prevail. Tarkanian's complaint sought redress for violation of both First and Fourteenth Amendment rights. Because the trial court made findings only on violation of Tarkanian's Fourteenth Amendment rights, the NCAA argues that he did not prevail on his First Amendment claim and the attorney's fees award should be reduced proportionately. We disagree. Tarkanian's claims for relief are not so easily separated. Both involve a common core of facts and are based on closely related legal theories. Moreover, Tarkanian obtained all the relief he hoped to obtain. *See* Hensley v. Eckerhart, 461 U.S. 424, 440 (1983) ("Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.").

The NCAA next asserts that the trial court erred by awarding attorney's fees for a phase of the litigation in which Tarkanian did not prevail. We agree. Tarkanian initially sued only UNLV. On appeal, this court reversed Tarkanian's favorable judgment for failure to join a necessary party, the NCAA. University of Nevada v. Tarkanian, 95 Nev. 389, 594 P.2d 1159 (1979). Nonetheless, the trial court awarded attorney's fees against the NCAA in favor of Tarkanian for fees expended during the first trial.

Section 1988 allows recovery of fees only to a prevailing party. In our view, the first trial is a distinct phase of this litigation in which Tarkanian did not prevail. *See* Doulin v. White, 549 F.Supp. 152 (E.D.Ark. 1982). The district court erred in awarding fees to Tarkanian for that phase of this litigation. On remand, the trial court shall reduce attorney's fees accordingly.

The trial court also awarded Tarkanian an additional $5,000.00 in fees that was not supported by billing records submitted. Because there was no evidence to support this amount, it shall likewise be eliminated.

Tarkanian submitted detailed records to establish attorney's fees, and except as noted, the trial court did not abuse its discretion in fixing the amount of fees awarded. Because some attorney's fees were appropriate pursuant to § 1988, it is unnecessary to consider Tarkanian's cross-appeal for fees as damages under state law.

*Testimony of Charles Alan Wright.*

The NCAA contends on Appeal that the trial court erred in refusing to grant a continuance in order to allow Charles Alan Wright to testify. The NCAA also asserts that the trial court should have admitted the transcript of Mr. Wright's prior testimony before a congressional sub-committee. Mr. Wright is a noted law professor and was a member of the Committee on Infractions. The NCAA argues that the trial court's failure to allow his testimony warrants reversal. We reject the NCAA's argument. Three members of the Committee on Infractions testified at trial, two of whom were law professors. In these circumstances, even if the trial court did err, we fail to see how the NCAA was prejudiced.

*The Trial Court Injunction.*

Finally the NCAA argues that the trial court's order granting injunctive relief is overly broad. We agree that the order does contain some confusing language. We are certain, however, that the trial court intended only to prohibit enforcement of the penalties imposed upon Tarkanian in Confidential Report No. 123(47) and UNLV's adoption of those penalties. To the extent the trial court's order may be given a broader interpretation, we modify its meaning to comport with this intention.

We have considered the NCAA's remaining contentions and conclude they lack merit.

