719 So.2d 360 (1998)
Mary Ann SICKON, Appellant,
v.
The SCHOOL BOARD OF ALACHUA COUNTY, FLORIDA, Appellee.
No. 97-2573.
District Court of Appeal of Florida, First District.
October 21, 1998.
*361 Paul A. Donnelly and Laura A. Gross of the Law Offices of Donnelly & Gross, P.A., Gainesville, for Appellant.
James F. Lang of Chandler, Lang & Haswell, P.A., Gainesville, and Thomas L. Wittmer of the School Board of Alachua County, Gainesville, for Appellee.
BENTON, Judge.
This is an appeal from a final order of the Alachua County School Board (School Board) denying the petition of Mary Ann Sickon for a formal hearing before a hearing officer of the Division of Administrative Hearings. A school teacher, she contends that she is entitled to a hearing under the Administrative Procedure Act to contest the Gainesville High School principal's decision not to name her band director for the 1997-98 academic year. The principal named her assistant band director instead. We reject her contention that her substantial interests were determined when she was "reassigned" as assistant band director.
We also reject the contention that she is entitled to an administrative hearing as an opportunity to refute "public false stigmatizing statements" that she alleges letters written to the School Board contained. According to the petition, the School Board treated these letters as public records and the principal relied on some of them in making a written performance appraisal which has now been rescinded.
Ms. Sickon has worked for the School Board as a teacher at Gainesville High School since 1982 and, since 1989, has done so under a professional services contract. Each year from 1982-83 through 1994-95, she was assigned "supplemented duties" as assistant band director, duties she also performed in the fall of 1995. In January of 1996 she became band director for the remainder of the school year. She was subsequently assigned "supplemented duties" as band director for the 1996-97 school year.[1]
When the principal notified Ms. Sickon that she would be assigned not as band director, but as assistant band director, for the 1997-98 school year, her status as band director for the remainder of the 1996-97 school year remained unchanged. Both assignments were independent of any professional services contract.
Also in February of 1997, the principal gave Ms. Sickon a written performance appraisal *362 that allegedly relied on accusations of misconduct. Disputing the allegations and disagreeing with the evaluation, Ms. Sickon successfully grieved the performance appraisal, pursuing the grievance process provided by the collective bargaining agreement between the teachers' union and the School Board.
In April of 1997, Ms. Sickon filed with the School Board the petition (anachronistically denominating an administrative law judge as a hearing officer of the Division of Administrative Hearings) with which the present proceeding began. The school board denied her request for a formal administrative hearing, on grounds that she had no property interest in her supplemental appointment as band director beyond the 1996-97 school year, nor any other cognizable substantial interest that had been affected.
In examining de novo whether her petition is legally sufficient, we are not bound by prior legal conclusions, whether pleaded by Ms. Sickon or reached by the School Board. The petition of Mary Ann Sickon for a formal hearing before a hearing officer of the Division of Administrative Hearings alleges that the "reassignment" occurred
(1) without approval of the School Board; (2) for a punitive reason; (3) in an unprofessional manner; (4) without being advised of the reason therefor; (5) based upon complaints which had been registered against her which were not discussed with and provided to her as early as feasible and before any related item was placed in her personnel file, and which were used against Sickon in her performance evaluation; (6) without being given first consideration for the teaching assignment of band director for 1997-98; and ([7]) at the same time the School Board made public false stigmatizing statements without providing Sickon not[i]ce and opportunity for a public name-clearing hearing. These actions violate Sickon's rights under the collective bargaining agreement, Florida Administrative Code, and United States Constitution.
We take as true only the well-pleaded factual allegations of the petition.[2]See Sterman v. *363 Florida State Univ. Bd. of Regents, 414 So.2d 1102, 1103 (Fla. 1st DCA 1982) ("Since it was dismissed without a hearing, the facts as they are alleged in the petition are presumed to be true.").
The order under review concludes that any legally recognized interests created by the 1996-99 collective bargaining agreement provisions that address supplemented duties or supplemental positions should be vindicated in keeping with the provisions of the collective bargaining agreement and are not proper subjects for a hearing under the Administrative Procedure Act. The order also specifically rejects the contention that Ms. Sickon was entitled to a name-clearing hearing. We agree with the School Board's legal conclusions and affirm.

Substantial Interests
The petition adequately alleges an immediate effect on Ms. Sickon's ability to remain band director. She would therefore be entitled to a hearing under the Administrative Procedure Act if non-renewal of her "supplemented duties" as band director affected or determined "substantial interests" within the meaning of sections 120.52(12), 120.569, and 120.57(1), Florida Statutes (1997). Whether she has any legally recognized interest in remaining band director is a question of substantive law.
It is not enough to look only to the Administrative Procedure Act. See U.S. Sprint Communications Co. v. Nichols, 534 So.2d 698, 699 (Fla.1988) (affirming denial of hearing sought under section 120.57(1) on grounds the agency action at issue did not "represent a new Commission action affecting appellant's substantive rights"); ASI, Inc. v. Florida Public Serv. Comm'n, 334 So.2d 594, 596 (Fla.1976) (rejecting proposition that "procedural requirements established by the administrative procedure act" confer "substantial interests" in affirming denial of hearing sought under section 120.57(1) by a person without "a legally recognized interest").
The allegations of the petition must be examined to determine whether the facts alleged amount to an injury "under the protection of pertinent substantive law.[3]Agrico Chemical Co. v. Department of Envt'l Regulation, 406 So.2d 478, 482 (Fla. 2d DCA 1981). On appeal, Ms. Sickon has abandoned any contention that her professional services contract conferred rights affected by her assignment as assistant band director in 1997-98. She places no reliance on any school board rule. Cf. French v. School Bd. of Polk County, 568 So.2d 497 (Fla. 2d DCA 1990). But she does contend that she has substantial interests based on rights she has under the collective bargaining agreement between the teachers' union and the School Board, under the provisions of the Florida Administrative Code, and under the United States Constitution.

Collective Bargaining Agreement
The collective bargaining agreement confers rights that the petition alleges were violated. Article VI, section 7 provides, in pertinent part "[a]s early as feasible after the complaint has been registered, the principal will discuss the complaint with the teacher." *364 Article XII, section 1(c) states that "[r]eassignments will not be made for punitive reasons." Article XII, section 1(d) provides that "[r]eassignments will be handled in a professional manner." Article XVII, section 13(e) provides "[qualified] applicants from a given school faculty will receive first consideration for a supplemental positions available at the school."
With exceptions not pertinent here,[4] Article VII of the collective bargaining agreement provides a comprehensive grievance process for vindication of rights conferred by the agreement. Ms. Sickon employed the grievance process in her successful challenge to the performance appraisal she received simultaneously with the news that she was to be assigned the assistant band director's supplemental position in 1997-98. But she did not grieve the assignment itself, although she now alleges that the assignment violated rights under the collective bargaining agreement.
In Blanchette v. School Board of Leon County, 378 So.2d 68, 69 (Fla. 1st DCA 1979), we enforced a provision in a collective bargaining agreement requiring arbitration of disputes "arising out of the collective bargaining agreement."
When parties through their bargaining representatives have contracted to arbitrate grievable disputes arising out of the collective bargaining agreement, grievable disputes must be resolved in that matter, if possible, rather than through APA procedures whose object is a final order expressing the decision of the employeragency and determining a party's substantial interest.
See also Kantor v. School Bd. of Monroe County, 648 So.2d 1266, 1267 (Fla. 3d DCA 1995) ("To the extent that appellant contends there was a violation of a provision of the collective bargaining agreement, appellant was obliged to resort to the grievance procedures specified therein.").
Redress for violations of rights arising under the collective bargaining agreement must be pursued in the manner contemplated by the collective bargaining agreement. See City of Miami v. Fraternal Order of Police, 378 So.2d 20, 23 (Fla. 3d DCA 1979) ("No principle is more firmly established than the requirement that, before resorting to the courts, one must pursue and exhaust any extrajudicial or administrative remedy which may provide the relief sought."). The collective bargaining agreement in Blanchette made arbitration mandatory, while the collective bargaining agreement here does not in terms require resort to the grievance process (which here, too, may culminate in arbitration). Nevertheless, when a collective bargaining agreement spells out detailed grievance and arbitration procedures, it implies that the parties intended that the procedures be used to enforce rights the agreement confers.[5] In the *365 absence of any contrary language[6] in the collective bargaining agreement or countervailing public policy, we hold that the parties must pursue the procedures established by the collective bargaining agreement are at issue. See School Bd. of Seminole County v. Morgan, 582 So.2d 787 (Fla. 5th DCA 1991) (upholding order restoring as band director a teacher who obtained the order using procedures laid down in a collective bargaining agreement); Martin v. School Bd. of Gadsden County, 432 So.2d 588, 588 (Fla. 1st DCA 1983) ("We are, in effect, asked to find that Administrative Procedures [sic] Act formal hearings are, as a matter of law, a part of a school system's personnel procedures. We will not do this."). On this basis, we uphold the board's denial of the petition for an administrative hearing insofar as the petition alleges substantial interests predicated on rights conferred by the collective bargaining agreement.

Florida Administrative Code Rule 6B-4.006(4)
Ms. Sickon also contends that her substantial interests are at issue because a provision of the Florida Administrative Code creates a legally cognizable right not to be "reassigned" for a punitive reason. She relies specifically on Criteria for Professional Practices for Reassignment of Instructional Personnel within a School Center, Florida Administrative Code Rule 6B-4.006(4), which provides: "Reassignment of instructional personnel shall not be used as a punitive measure."
The limited purpose of Florida Administrative Code Rule 4B-4.006 is to establish a code of ethical and professional "performance standards" for educators.[7] Language in Florida Administrative Code Rule 6B-4.001 delimits the reach of the rule language on which Ms. Sickon relies:
Nothing contained herein shall be construed to limit or affect the lawful authority and responsibility of the school board, the superintendent and his or her staff, principals of the schools, or teachers.
Although "those who practice in this profession shall be obligated to abide by these standards," section 231.546(2)(a), Florida Statutes (1997), the standards evince no purpose to confer legally enforceable rights on students, fellow teachers, or others to whose benefit educators' ethical practices redound.
Florida Administrative Code Rule 4B-4.006 is analogous to the Rules Regulating the Florida Bar. While a violation of the latter rules may subject an attorney to discipline, such a violation is no basis for a civil action by a party whom the violation harms. See Smith v. Bateman Graham, P.A., 680 So.2d 497 (Fla. 1st DCA), review dismissed, 678 So.2d 337 (Fla.1996). Similarly, while a violation of Florida Administrative Code Rule 4B-4.006 can serve as grounds for a charge of unprofessional practice against an educator,[8] *366 the rule does not purport to confer legally cognizable rights on instructional personnel or anybody else. Ms. Sickon has no substantial interests entitling her to an administrative hearing by virtue of Florida Administrative Code Rule 6B-4.006(4).
It is therefore unnecessary to decide whether a reassignment within the meaning of that rule took place. Ms. Sickon was assigned "supplemented duties" through the 1996-97 school year only. The assignment expired at the end of the 1996-97 school year, without being renewed for the 1997-98 school year. The present case differs from Osburn v. School Board of Okaloosa County, 451 So.2d 980 (Fla. 1st DCA 1984), where a principal was reassigned as an assistant principal at another school during the same school term. When, in February of 1997, Ms. Sickon was informed that assignment of the band director's supplemented duties would not be renewed and was offered instead the supplemented duties of assistant band director for the 1997-98 school year, no contractual term was altered, nor was any duty added or subtracted for any portion of the 1996-97 school year.

Federal Constitutional Rights
Finally, Ms. Sickon contends that federal constitutional rights to procedural due process entitle her to an administrative hearing. The cases seem to support her contention that, where the Fourteenth Amendment would require hearings, even socalled "name-clearing hearings," the Administrative Procedure Act has been construed to allow hearings under the Act. See Yunker v. University of Fla., 602 So.2d 557 (Fla. 1st DCA 1992); see generally Garcia v. Walder Elecs., Inc., 563 So.2d 723 (Fla. 3d DCA 1990); Cornwell v. University of Fla., 307 So.2d 203, 210 (Fla. 1st DCA 1975) ("A professor is, and should be, entitled to a hearing if his reputation, good name, honor or integrity has been attacked by University officials in his nonrenewal notice."). The Fourteenth Amendment forbids state deprivation of life, liberty, or property[9] without due process of law.
Here the petition alleges that a liberty interest in reputation was infringed. Without more, state injury to reputation does not constitute deprivation of a protected liberty interest. See Paul v. Davis, 424 U.S. 693, 708-09, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). Where, however, a state employee suffers injury to reputation in conjunction with the termination of state employment even though lacking any entitlement to continued state employment, see Yunker, 602 So.2d at 557-58the courts have recognized a protected liberty interest and the right to procedural due process. See Siegert v. Gilley, 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); Board of Regents of State Colleges v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).
The petition alleges that the School Board "published" letters it had received that contained false accusations against Ms. Sickon, see Buxton v. City of Plant City, Florida, 871 F.2d 1037 (11th Cir.1989), and that her performance appraisal was at least in part based on some of the false accusations. But the principal's letter to Ms. Sickon said only:

*367 Accept this as official notice that I will be changing your supplemented responsibilities from band director to assistant band director for the 1997-98 school year. I appreciate the service you have provided to our students, parents and entire school community while serving as our band director since January of 1996.
Along with this letter, she received her performance appraisal. Neither the letter nor the performance appraisalnow that it has been rescindedwarrants a name-clearing hearing. See Codd v. Velger, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977). The claim of state-inflicted stigmatization boils down to the claim that the School Board made letters it received public.[10] But the School Board was careful, in the order under review, not to adopt or endorse any allegation in any of the letters it had received. It expressly refrained from doing so.
Assumingwithout decidingthat Ms. Sickon's conclusory allegations as to the letters' contents satisfy pleading requirements, she has nevertheless failed to show entitlement to an administrative name-clearing hearing. Assuming furtheragain without decidingthat the petition adequately alleges "defamation by a state official," it clearly does not allege that defamation "occur[red] in the course of the termination of employment." Paul, 424 U.S. at 710, 96 S.Ct. 1155. Nor can the change in Ms. Sickon's status "be regarded essentially as a loss of employment." Moore v. Otero, 557 F.2d 435, 438 (5th Cir.1977). Not only is there "no suggestion that the State ... foreclosed [Ms. Sickon's] freedom to take advantage of other employment opportunities," Roth, 408 U.S. at 573, 92 S.Ct. 2701, the School Board itself offered her full employment, including alternative supplemented duties as assistant band director.
The present case resembles Diehl v. Albany County School, 694 F.Supp. 1534 (D.Wyo. 1988), where the court held that alleged stigmatization in the context of dismissal as a high school coach did not implicate protected liberty interests because the plaintiff continued in his teaching position and as a coach at a junior high school. But see Brewer v. Purvis, 816 F.Supp. 1560 (M.D.Ga.1993); Tarkanian v. National Collegiate Athletic Ass'n, 103 Nev. 331, 741 P.2d 1345 (Nev. 1987). The same principle applied in Brew v. School Board of Orange County Florida, 626 F.Supp. 709 (M.D.Fla.1985), where the court denied relief because, although an allegedly stigmatized plaintiff's teaching contract was not renewed, she was later hired by the same school as a substitute teacher. See also Schultea v. Wood, 27 F.3d 1112 (5th Cir.1994) (holding that a transfer from police chief to assistant police chief did not implicate a protected liberty interest). The court in Moore denied relief to a policeman who had been demoted from corporal to patrolman, saying "[t]he internal transfer of an employee, unless it constitutes such a change of status as to be regarded essentially as a loss of employment, does not provide the additional loss of a tangible interest necessary to give rise to a liberty interest." 557 F.2d at 438 (footnote omitted).
Nonrenewal of Ms. Sickon's supplemented duties as band director, while her professional services contract as a tenured teacher remained intact, occasioned no right under the Fourteenth Amendment to an administrative name-clearing hearing. Since the petition of Mary Ann Sickon for a formal hearing before a hearing officer of the Division of Administrative Hearings demonstrated no other basis on which she was entitled to an administrative hearing, the School Board's order denying the petition is affirmed.
ERVIN, J., concurs.
BOOTH, J., specially concurs.
BOOTH, Judge, specially concurring.
I agree in the result of this decision.
NOTES
[1] As band director, Ms. Sickon received supplemental pay at an annual rate of $2,381, in addition to her regular salary. The assistant band director received supplemental pay at an annual rate of $1,760.
[2] The petition of Mary Ann Sickon for a formal hearing before a hearing officer of the Division of Administrative Hearings alleges as disputed issues of material fact the following:

4. Whether Sickon's substantial interests were affected when she was reassigned on February 5, 1997, from her teaching assignment as Gainesville High School (GHS) band director to assistant band director for the academic year 1997-98 without the approval of the School Board, in violation of her contractual rights under Article IV, Section 16 and Article XII, Section 1(a) of the collective bargaining agreement.
5. Whether Sickon's substantial interests were affected when she was reassigned from her teaching assignment as GHS band director to assistant band director for a punitive ... reason, in violation of her contractual rights under Article XII, Section 1(c) of the collective bargaining agreement and Florida Administrative Code rule 6B-4.006(4).
6. Whether Sickon's substantial interests were affected when her reassignment from her teaching assignment as GHS band director to assistant band director was handled in an unprofessional manner, in violation of her contractual rights under Article XII, Section 1(d) of the collective bargaining agreement.
7. Whether Sickon's substantial interests were affected when she was reassigned from her teaching assignment as GHS band director to assistant band director without being advised by the School Board of the reasons for her reassignment, in violation of her rights under Florida Administrative Code Rule 6B-4.006(2).
8. Whether Sickon's substantial interests were affected when GHS Principal Virginia Childs failed to provide copies to and discuss with Sickon complaints which had been registered against Sickon, as early as feasible after each complaint was registered and before any related item was placed in Sickon's personnel file, and when the complaints were used against Sickon in her performance evaluation and the decision to reassign her, in violation of Sickon's contractual rights under Article 5 and Article VI, Section 7 of the collective bargaining agreement.
9. Whether Sickon's substantial interests were affected when Sickon, a qualified applicant from GHS, did not receive first consideration for the teaching assignment of GHS band director for the academic year 1997-98, in violation of her contractual rights under Article XVIII, Section 13(e) of the collective bargaining agreement.
10. Whether Sickon's substantial interests were affected when the School Board refused and failed to provide her with notice and an opportunity for a name clearing hearing after making public false or contested stigmatizing statements concerning Sickon in connection with and at the time of her reassignment and decrease in pay, in violation of her interests in liberty and her good reputation under the Fourteenth Amendment to the United States Constitution. See Buxton v. City of Plant City, Florida, 871 F.2d 1037 (11th Cir.1989); Vanelli v. Reynolds School District No. 7, 667 F.2d 773 (9th Cir.1982).
[3] Some commentators have criticized resort to substantive law for this purpose. See Patricia A. Dore, Access to Florida Administrative Proceedings, 13 Fla. St. U.L.Rev. 965, 1086 (1986) ("The Florida Supreme Court's error in ASI has been repeated by the district courts of appeal."); Arthur J. England & L. Harold Levinson, Administrative Law, 31 U. Miami L.Rev. 749, 757 n. 44 (1977) (Professor Levinson's views). The cases have adopted the "zone of interest" test, which requires analysis of regulatory statutes or other pertinent substantive law in order to ascertain a party's substantial interests. See Friends of the Everglades, Inc. v. Board of Trustees of Internal Improvement Trust Fund, 595 So.2d 186 (Fla. 1st DCA 1992); Florida Optometric Ass'n v. Department of Prof I Regulation, Bd. of Opticianry, 567 So.2d 928 (Fla. 1st DCA 1990); South Fla. Water Management Dist. v. City of St. Cloud, 550 So.2d 551, 552-553 (Fla. 5th DCA 1989); Boca Raton Mausoleum, Inc. v. State, Dep't of Banking and Finance, Div. of Finance, 511 So.2d 1060 (Fla. 1st DCA 1987); Shared Servs. v. State, Dep't of Health and Rehabilitative Servs., 426 So.2d 56 (Fla. 1st DCA 1983); Agrico Chemical Co. v. Department of Envt'l Regulation, 406 So.2d 478 (Fla. 2d DCA 1981).
[4] The collective bargaining agreement provides for an administrative hearing and subsequent judicial review in certain instances. Article VI, sections 8, 9, and 11 of the collective bargaining agreement provide that a teacher who is suspended or dismissed during the term of a contract, or who, if under a continuing contract or professional services contract, is returned to probationary status or annual contract status, is entitled to an administrative hearing. Ms. Sickon does not allege that she was suspended or dismissed during a contract term. Supplemental positions are not the subject of continuing contracts or professional services contracts, and the petition does not allege otherwise.
[5] The present case differs from Sublett v. District School Board of Sumter County, 617 So.2d 374, 377 (Fla. 5th DCA 1993), where

the collective bargaining agreement expressly provides that no rights under Florida or other applicable laws are waived by becoming a party to the agreement. Moreover, the only procedure contained in the agreement is an employee's right to "appeal" to the Superintendent and the Board "when terminated".
The collective bargaining agreement involved in Sublett contained the following provision:
Nothing contained herein shall be construed to deny or restrict to any employee such rights as he/she may have under Florida State Laws or other applicable laws or regulations. The rights granted to employees hereunder shall be deemed to be in addition to those provided elsewhere.
Id. at 376. Nothing of this kind appears in the collective bargaining agreement involved here.
Another important distinction is the elaborate delineation of grievance procedures found in the collective bargaining agreement involved in the present case. In stark contrast, the Sublett collective bargaining agreement provides simply:
Dismissal procedures shall insure that the employee has the right of making an appeal to the Superintendent and the Board when terminated.
Id. This language was inadequate to establish a workable grievance process. As we stated in a related context:
Provisions in a contract providing for arbitration must be definite enough so that the parties at least have some idea as to what particular matters are to be submitted to arbitration and set forth some procedures by which arbitration is to be effected. G & N Construction Co. v. Kirpatovsky, 181 So.2d 664 (Fla.App.1966).
Wood-Hopkins Contracting Co. v. C.H. Barco Contracting Co., 301 So.2d 479, 480 (Fla. 1st DCA 1974).
[6] The collective bargaining agreement provides for administrative hearings only in cases of suspension and dismissal and in the event of abrogation of continuing contracts or professional service contracts. See supra note 4.
[7] The statutory authority cited for this rule is section 231.546(2)(a), Florida Statutes (1997), which provides:

(2) The commission shall develop, through the teaching profession, standards of professional practice in areas including, but not limited to, ethical and professional performance.
(a) Members of the teaching profession shall develop and recommend to the commission codes of ethics and professional performance. Upon adoption of such professional standards by the state board, those who practice in this profession shall be obligated to abide by these standards.
[8] Subsection 231.546(2)(c), Florida Statutes (1997), provides:

An apparent violation of any of the codes and standards so adopted shall be deemed to be sufficient for the bringing of a charge of unprofessional practices, which charge will be reviewed and acted upon by the Education Practices Commission.
[9] What constitutes property for these purposes is ordinarily a question of state law. Here the School Board did not deprive Ms. Sickon of any right to property when the principal assigned her supplemented duties as assistant band director instead of as band director for the academic year 1997-98. See Fertally v. Miami-Dade Community College, 651 So.2d 1283 (Fla. 3d DCA 1995); State ex rel. Slater v. Smith, 142 So.2d 767, 770 (Fla. 1st DCA 1962) (holding "appellant's rights of tenure apply only to his employment as a teacher for which he held a certificate issued by the State Department of Education. Such tenure under the continuing contract of employment held by appellant does not extend to the right of reemployment as a coach or athletic director."). Cf. Spiegel v. University of South Fla., 555 So.2d 428 (Fla. 2d DCA 1989). The decision in Tuckman v. Florida State University, 489 So.2d 133 (Fla. 1st DCA 1986), where substantial interest was conceded by the state agency, is not to the contrary.
[10] Ms. Sickon does not allege that the School Board failed to take advantage of any exemption available to it under section 231.291, Florida Statutes (1997), or acted in any manner inconsistently with the public records statutes, section 119.01 et seq., Florida Statutes (1997).