679 So.2d 1237 (1996)
CLEVELAND CLINIC FLORIDA HOSPITAL d/b/a Cleveland Clinic Hospital, A Not For Profit Corporation, Petitioner,
v.
AGENCY FOR HEALTH CARE ADMINISTRATION; South Broward Hospital District d/b/a Memorial Regional Hospital d/b/a Memorial Hospital Pembroke; Columbia Hospital Corporation of South Broward d/b/a Westside Regional Medical Center; Community Hospitals of Galen, Inc. d/b/a Pompano Beach Medical Center; and Eleanor Hunter, Hearing Officer, Respondents.
No. 95-4368.
District Court of Appeal of Florida, First District.
September 4, 1996.
Rehearing Denied October 16, 1996.
*1238 John R. Beranek, C. Gary Williams and Stephen C. Emmanuel of Ausley & McMullen, Tallahassee, Robert A. Weiss of Parker, Hudson, Rainer & Dobbs, Tallahassee, for Petitioner.
Lesley Mendelson, Tallahassee, for Agency for Health Care Administration.
R. Terry Rigsby, Geoffrey D. Smith, Wendy A. Delvecchio of Blank, Rigsby & Meenan, Tallahassee, Clarke Walden, General Counsel, Memorial Hospital, Hollywood, for South Broward Hospital District.
Stephen A. Ecenia, R. Davis Pescott of Rutledge, Ecenia, Underwood, Purnell & Hoffman, Tallahassee, for Columbia Hospital Corporation of South Broward and Community Hospitals of Galen, Inc.
SMITH, Senior Judge.
Cleveland Clinic Hospital (Cleveland) petitions for review of nonfinal orders of the Division of Administrative Hearings (DOAH), and of the Agency for Health Care Administration (AHCA). The ultimate issue we must decide is whether Cleveland's certificate of need (CON) application filed with AHCA, for approval of capital expenditures to relocate and rebuild its 150-bed acute care hospital at a new location within the same health care service district, is subject only to expedited, non-comparative review by AHCA, without participation of intervenors. We find that Cleveland is entitled to expedited, non-comparative review, and therefore reverse AHCA's order requiring Cleveland's application to undergo batched, comparative review.
Prompted by the threat of hurricanes and the age-related deterioration of the physical plant on the Atlantic Coast in Ft. Lauderdale, Cleveland made the decision to relocate the hospital by building a new facility near the City of Weston, in the southwestern quadrant of the inhabited portion of Broward County. Pursuant to agency rules and prior interpretations of the governing statutes found in Chapter 408, Florida Statutes, AHCA determined that Cleveland's application was complete, and issued its state agency action report (SAAR) preliminarily denying *1239 the application for reasons not relevant to the issues presented in this appeal. Significantly, AHCA acknowledged in its report that the proposed project involved a replacement facility, with no change in the licensed bed capacity, and no new services subject to CON review; and that the project was "not driven by a fixed need pool." AHCA also admitted in proceedings below that Cleveland's application was not subjected to the requirements of section 408.039(1) and (2), Florida Statutes, and that it was not comparatively reviewed against any other pending applications. Upon being advised of the denial of its application, Cleveland sought a formal administrative hearing, and its petition was referred to a DOAH hearing officer.
Respondents, South Broward Hospital District (South Broward), Columbia Hospital Corporation of South Broward (Columbia Hospital), and Community Hospitals of Galen (Community Hospitals), own and operate hospitals in Service District 10, which encompasses Broward County. Subsequent to the filing of Cleveland's application, South Broward and Community Hospitals filed applications for CONs for additions to or replacement of hospital facilities. South Broward sought the addition of up to 35 acute care beds at its Memorial Hospital West. Community Hospitals applied for a CON to replace its existing Pompano Beach Medical Center with a new facility to be constructed in western Broward County. South Broward and Community Hospitals filed petitions to intervene in Cleveland's DOAH hearing, and sought remand to AHCA for comparative review of Cleveland's application. Columbia Hospital also sought intervention, contending that its Westside Regional Medical Center would be substantially affected by approval of Cleveland's application.
In a two-page order, issued following a non-evidentiary hearing, the DOAH hearing officer summarily granted the respondent hospitals' petitions to intervene and remanded the cause to AHCA for comparative review, citing as authority Sarasota County Public Hospital Board v. Department of Health and Rehabilitative Services, 553 So.2d 189 (Fla. 2d DCA 1989).
Cleveland timely filed in this court its petition for review of nonfinal agency action, and, alternatively, for issuance of a writ of mandamus directed to the hearing officer's order. This Court issued its order to show cause, to which AHCA responded, requesting that the agency be afforded an opportunity to act on the hearing officer's order. Acceding to this request, this Court entered an order relinquishing jurisdiction to AHCA for a period of 30 days.
On remand, AHCA invited the parties to submit proposed orders, then entered the order under review, announcing its intention to review Cleveland's application on a comparative basis along with the applications of South Broward and Community Hospitals. After a case management conference, Cleveland Clinic was ordered by this Court to file its consolidated and amended petition addressing all issues raised by the orders of the hearing officer and AHCA.
Cleveland first contends that the hearing officer's order granting intervention and remanding to AHCA for comparative review was beyond the hearing officer's jurisdiction and in violation of section 408.039(5)(b), Florida Statutes, as well as established agency rules and judicial precedent. As to this issue, we agree with Cleveland's suggestion that it has largely been mooted by this Court's action in relinquishing jurisdiction to AHCA for entry of an order regarding Cleveland's entitlement to expedited review. We find it unnecessary, therefore, to dwell on this procedural aspect of the case, and will proceed to address AHCA's order on its merits.
We begin by observing that AHCA's interpretation of the statutes governing its actions in this proceeding, as reflected in the order under review, represents a radical turnabout from its prior interpretations and practices. AHCA's order itself acknowledges that "the issues raised in the instant case prompted re-examination of the agency's prior interpretation of its governing statutes with regard to replacement hospitals...." During oral argument before this Court counsel for the agency candidly stated that AHCA had "changed its mind."
*1240 In the order under review AHCA proceeds in an orderly fashion to recite and interpret the key statutory provisions. Under section 408.032(1), Florida Statutes, the term "capital expenditure" is defined to include the "replacement" of the plant and equipment of a health care facility. The order states, in substance, that because of the broad wording of the statute, "merely defining a proposed project as a capital expenditure does not set it apart from those projects which are subject to batched, comparative review."[1]
The order then turns to section 408.036(1)(c), which provides, in part, for CON review of "[a] capital expenditure of $1 million or more by or on behalf of a health care facility ... for a purpose directly related to the furnishing of health services at such facility...." (Emphasis added.) However, the order declares that in order to be reviewable solely on the basis of this subsection, the capital expenditure must relate to an expenditure "at the existing health care facility." (Emphasis added.) AHCA's order concludes that a proposal to construct a replacement hospital at a new location is subject to comparative review because it does not fall within the express condition of section 408.036(1) that the proposed project be accomplished at the location of the existing hospital. AHCA's order further finds this interpretation consistent with the limitation on standing found in section 408.039(5)(b), which denies standing to health care providers to intervene in an administrative proceeding which is subject to CON review "solely on the basis of section 408.036(1)(c)."
The primary focus of Cleveland's attack on the agency's interpretationan interpretation vigorously defended by all respondents in this proceedingis that it is totally at odds with that interpretation previously adopted by the agency in prior proceedings, as most notably evidenced by the decisions in Venice Hospital, Inc. v. Department of Health and Rehabilitative Services, 414 F.A.L.R. 1220 (DOAH October 31, 1990), and in HCA Health Services of Florida, Inc. v. Department of Health and Rehabilitative Services, 599 So.2d 211 (Fla. 1st DCA 1992), rev. denied, 613 So.2d 5 (Fla.1992). In Venice Hospital, a DOAH hearing officer found valid proposed rule 10-5.004(2)(g) (now rule 59C-1.004(2)(f)) making capital expenditure projects subject to expedited review. In so ruling, the hearing officer adopted proposed findings submitted by HRS including, in substance, a finding that an application to relocate a hospital is considered a capital expenditure and held that pursuant to section 381.709(5)(b) [now 408.036(5)(b)], competitors do not have standing to challenge a proposed capital expenditure; that only when a replacement facility would involve no new beds or changed bed use, involve no substantial change in services, and involve no substantial change in service area would HRS consider such an application to be solely reviewable as a capital expenditure and thus entitled to expedited review; and that replacement facility applications typically involve a determination not of whether dollars will be spent, but rather, how they are best spentby replacement or by renovation. Finally, and most significantly, the Venice Hospital order provides in paragraph 33:[2]
33. Further, when a capital expenditure approval is sought to replace or relocate an existing facility, no one other than the applicant/existing facility can apply to spend or make those expenditures. An unrelated entity cannot compete to replace another entity's existing facility. Conducting a comparative review with respect to a capital expenditure project for the replacement of a hospital is illogical, unworkable, and futile.
*1241 In this Court's HCA decision, we reviewed the identical statutory language now urged by respondents as supporting AHCA's order for comparative review. In that case we found that the applicant for a CON to replace and relocate a hospital was entitled to expedited, non-comparative review. We approved the contention by HRS that the relocation of a hospital qualified as a "capital expenditure" under section 381.706(1)(c) (now 408.032(1)), and that under section 381.709(5)(b) (now 408.039(5)(b)), existing health care providers have "no standing or right to intervene in an administrative hearing involving the [sic] health care project which is subject to certificate of need review solely on the basis of section 381.706(1)(c) [now 408.036(1)(c)]." 599 So.2d at 212. In addition, we addressed the contention, also made by the respondent hospitals here, that competing hospitals should have an opportunity to be heard on the issue of whether an application for a proposed new hospital is reviewable solely as a "capital expenditure." Our opinion disposed of this contention as contrary to the statutes governing standing, observing that a change would be a matter "to be addressed by the legislature." Id. at 213. We note at this juncture that the legislature has met in regular session four times since our HCA decision, with no change in the statutory scheme relating to standing.
Conspicuously absent from AHCA's order is any reference to the agency's former position on the issue presented in this case as reflected in the decisions in Venice Hospital and HCA, above discussed. Indeed, the agency's order fails to acknowledge the existence of its own Rule 59C-1.004(2)(f) which specifically includes "capital expenditure projects" in the list of projects entitled to expedited review. Instead, AHCA reinterprets the language of section 408.036(1)(c) by adding the word "existing" to the statutory phrase "at such facility," reading the statute as if it read "at such existing facility."
AHCA in its order, and the respondents in their briefs and arguments before this Court, rely heavily upon the decisions in Sarasota County, supra, and Bio-Medical Applications of Clearwater, Inc. v. Department of Health and Rehabilitative Services, 370 So.2d 19 (Fla. 2d DCA 1979), in which the concept of "mutually exclusive applications" was applied in determining whether competing applicants were entitled to comparative review. We agree with Cleveland's contention that respondents' reliance on these decisions is misplaced. The court in Sarasota County recognized the statutory lack of standing to intervene in an application for relocation of a hospital. Nevertheless, the court ordered comparative review at the request of a competing applicant who proposed to build a satellite hospital which would house beds transferred from its main hospital. The court found that the agency had already comparatively reviewed the applications to some extent before granting a CON for the hospital relocation, indicating a determination by the agency that the applications were in fact mutually exclusive. This factor prompted the court to invoke the fundamental fairness standard of Bio-Medical requiring comparative review of mutually exclusive applications.
In Bio-Medical, the court held that comparative review was required where two applicants applied for new chronic kidney dialysis facilities in the same health planning area. The court found the "Ashbacker doctrine" [3] applicable, stating: "We are not the first to observe that where need is determined in accordance with a quantitative standard; that is, by number of units, a fixed pool of needed investments is thereby created." Id. at 23. Bio-Medical is clearly distinguishable from the case before us in that it involved two new entries into the health care market, both competing for a "fixed pool of needed investments." Here, for reasons amply stated in Venice Hospital, the relocation of a hospital does not involve competition for a "fixed pool of needed investments."[4]
Aside from AHCA's decision to reinterpret the governing statutes, that is, to simply "change its mind," there is no good *1242 reason why the agency's abrupt change of established policy, practice and procedure should be sanctioned. Flamingo Lake RV Resort, Inc. v. Department of Transportation, 599 So.2d 732 (Fla. 1st DCA 1992). Without question, an agency must follow its own rules, Boca Raton Artificial Kidney Center v. Department of Health and Rehabilitative Services, 493 So.2d 1055 (Fla. 1st DCA 1986), but if the rule, as it plainly reads, should prove impractical in operation, the rule can be amended pursuant to established rulemaking procedures. However, "[a]bsent such amendment, expedience cannot be permitted to dictate its terms." Id. at 1057. That is, while an administrative agency "is not necessarily bound by its initial construction of a statute evidenced by the adoption of a rule," the agency may implement its changed interpretation only by "validly adopting subsequent rule changes." Department of Administration, Division of Retirement v. Albanese, 445 So.2d 639, 642 (Fla. 1st DCA 1984). The statutory framework under which administrative agencies must operate in this state provides adequate mechanisms for the adoption or amendment of rules. See Section 120.535 and 120.54, Florida Statutes. To the extent that the results sought by an agency cannot be accomplished by changes in the administrative rules, interested parties must seek a remedy in the legislature. Our decision in HCA strongly indicates that the latter course is required to effect the change sought by AHCA and the other respondents. However, we are not required to determine this issue in order to resolve the present controversy. And in any event, any such changes would have no bearing upon Cleveland's right to expedited review in the case before us. Central Florida Regional Hospital, Inc. v. Department of Health and Rehabilitative Services, 582 So.2d 1193 (Fla. 5th DCA 1991), rev. denied, 592 So.2d 679 (Fla. 1991) (agency cannot apply one set of rules during the application process and then apply a different set of rules after the applicants have already relied upon agency's announced policies and requirements).
Finally, we reject respondents' arguments that the Court should not undertake review of the non-final orders here because an appeal from a final order after comparative review would afford an adequate remedy. Comparative review, with its mandated time frames and attendant delays, would have the effect of depriving Cleveland of the very thing sought in this litigation, namely, enforcement of its vested statutory right to expedited review. Thus, appeal from a final order could not restore this right to Cleveland.
Accordingly, the hearing officer's order granting intervention and remanding the case to AHCA is quashed, and AHCA's order for comparative review is reversed. This cause is remanded to DOAH for a formal hearing consistent with this opinion.
ERVIN and KAHN, JJ., concur.
NOTES
[1] For clarification, it should be noted that under section 408.036(2), certain projects requiring certificates of need are subject to expedited review, rather than batched, comparative review. The statute provides that the projects subject to expedited review "shall include, but not be limited to," those specifically listed in paragraphs (a) through (k) of that subsection. The statute also requires the Department (HRS, predecessor to AHCA) to develop rules to implement the provisions for expedited review. Pursuant to this mandate, the Department promulgated Rule 59C-1.004(2)(f), making "capital expenditure projects" also subject to expedited review.
[2] The copy of the order reported at 414 F.A.L.R. 1220 inexplicably omits paragraphs 30 and 31. The certified copies of the order provided to us by the parties were unabridged.
[3] Ashbacker Radio Corp. v. F.C.C., 326 U.S. 327, 66 S.Ct. 148, 90 L.Ed. 108 (1945).
[4] As previously noted, AHCA's SAAR found that Cleveland's project was "not driven by a fixed need pool."