845 So.2d 223 (2003)
BROOKWOOD-WALTON COUNTY CONVALESCENT CENTER and Brookwood-Washington County Convalescent Center, Appellants,
v.
AGENCY FOR HEALTH CARE ADMINISTRATION, Appellee.
No. 1D02-0830.
District Court of Appeal of Florida, First District.
April 8, 2003.
Rehearing Denied May 19, 2003.
*224 Theodore E. Mack, of Powell & Mack, Tallahassee, for Appellants.
Garnett W. Chisenhall, Assistant General Counsel, Tallahassee, for Appellee.
BROWNING, J.
Brookwood-Walton County Convalescent Center and Brookwood-Washington County Convalescent Center (Appellants) *225 appeal the final order issued by the appellee, Agency for Health Care Administration (AHCA), denying their request for an interim rate increase. We reverse the final order.
Appellants are licensed nursing homes in the State of Florida that participate in the Florida Medicaid Program (Medicaid), part of a joint federal-state, needs-based program providing nursing home care to persons eligible for such care who fall below a certain level of income and assets. Historically, Appellants' two facilities involved here have been high Medicaid providers: currently, 90% (Washington County) and 85% (Walton County), compared to the statewide average of 50-55%. AHCA is responsible for the administration of Medicaid in Florida. § 409.902, Fla. Stat. (2001). Medicaid is a prospective reimbursement program in which a facility's reimbursement is based on past costs adjusted or inflated to approximate future costs. In other words, the reimbursement rates for the current year are based on a facility's report of its allowable costs incurred the previous year. In determining allowable reimbursable costs, AHCA utilizes the Florida Title XIX Long-Term Care Reimbursement Plan (Plan), the Federal Medicare Program's Health Insurance Manual (HIM-15), and generally accepted accounting principles (GAAP). The Plan has been adopted and incorporated by reference in Rule 59G-6.040, Florida Administrative Code. Through incorporation, AHCA has adopted the HIM-15 as a rule. See Rules 59G-1.010(102) & -6.010, Fla. Admin. Code. In assessing what is an allowable cost, AHCA looks, first, to the Plan; second, to the HIM-15; and third, to GAAP. Generally, allowable costs are divided into the categories of property, patient care, and operating expenses. In determining the prospective rate, AHCA inflates the reportable allowable costs in each category forward, and those inflated costs are then subject to various class ceiling limitations and target limitations. A ceiling is an upper limit on the cost that will be reimbursed; a target limitation is a limit on the rate of increase of costs from year to year. Although a nursing home may be under its class ceilings, any increase in its costs that exceeds the target limit will not be recognized for reimbursement purposes. After applying the inflation factor, the class ceilings, and the target limitations to allowable costs, AHCA arrives at a per-patient, per-day rate at which the nursing home will be reimbursed for the next year. Because reimbursement is prospective and subject to certain limits, a facility may be unable to recover allowable costs if they rise unexpectedly. In such instances, the Plan provides for an interim rate adjustment under very limited circumstances. Such interim rates are covered in section IV.J. of the Plan.
In 2000, Appellants experienced a substantial increase in their liability insurance premiums. However, those increases occurred after Appellants' 1999 insurance costs had been used to establish their 2000 reimbursement rates. Because of the lag time between the increase in insurance premiums and the filing of Appellants' cost report, the increase could not be recovered through the standard prospective reimbursement procedures. As a result, on May 30, 2000, Appellants asked AHCA for an interim rate increase for general and professional liability insurance covering the Washington County and Walton County facilities. That request was denied, which gave Appellants a point of entry to challenge the agency's decision. Appellants were advised that the requested change in reimbursement did not satisfy the requirements of section IV.J.2. of the Plan, for there was no requirement then for a nursing home to carry liability insurance; and no applicable federal or state *226 law, rule, or standard had changed so as to cause Appellants' costs to increase or to warrant an interim rate increase. After a formal administrative hearing, the administrative law judge (ALJ) issued an order recommending that Appellants receive an interim rate increase. AHCA filed exceptions to the recommendation, and Appellants filed a response. AHCA entered a final order rejecting the recommendations and denying the request for an interim rate increase.
In the recommended order, the ALJ found that several insurance companies had pulled out of the State of Florida due to increased losses in nursing home liability. This crisis is due partly from increased civil litigation brought against nursing homes pursuant to sections 400.022 and -.023, Florida Statutes. Florida's nursing home population is significantly larger than the national average, and this state's rate of nursing home litigation is significantly higher than the national average. From 1999 to 2000, Appellants' liability insurance premium costs for their six Florida facilities increased from $400,000.00 to $4,000,000.00. Of that amount, the premium costs for the Walton County facility rose from $56,000.00 to $546,000.00, and the costs for the Washington County facility rose from $84,000.00 to $819,000.00. The increase in premiums occurred after Appellants' rates had been set based on their 1999 insurance costs. Since September 2000, when Appellants' liability insurer left the state, Appellants have been unable to obtain liability insurance for their Florida facilities. Although it was possible for Appellants to self-insure, they did not. The ALJ found that self-insurance generally is feasible only for facilities larger than Appellants' facilities.
The Plan included provisions that allow a nursing home participating in Medicaid to request an interim change in its reimbursement rate when it incurs increased costs resulting from patient care or operating changes made to comply with existing state or federal rules, laws, or standards, and such changes in cost are at least $5,000.00 or 1% of the provider's current total per-diem rate. § IV.J.2. In Paragraph 18 of the recommended order, the ALJ found that other subsections of section J. of the Plan, which dealt with new requirements or a new interpretation of old requirements, were inapplicable to the instant proceedings. Farther in the same paragraph, the ALJ found:
The term standards as used in Section J refers to standards in the Reimbursement Plan, Section IV titled "Standards," the standards of care and operation detailed by the Medicaid program in its provider handbooks and such standards as are detailed in the Code of Federal Regulations, and HCFA/HHS guidelines, as well as state statutes and rules. These standards are the usual or customary method or practice used by the nursing home industry to gain reimbursement from Medicaid. The term standards include[s] reimbursement standards, methods or principles for [M]edicaid providers.
AHCA rejected this finding. At the time of Appellants' request for an interim rate increase, there was no specific requirement in the Plan or in state or federal law requiring that liability insurance be carried by a nursing home; nor was there a change in the Plan or in state or federal law or regulations requiring that liability insurance be carried by such providers. On the other hand, in Paragraph 21, which AHCA rejected, the ALJ found that the reimbursement standards or requirements set forth in the HIM-15 made it clear that a prudent Medicaid provider was expected to carry liability insurance or to self-insure in order to be reimbursed for any uninsured losses. Section 2160.2 of the Provider *227 Reimbursement Manual stated: "Liability damages paid by the provider, either imposed by law or assumed by contract, which should reasonably have been covered by liability insurance, are not allowable." Section 2161 of the HIM-15 stated that the reasonable costs of such insurance were allowable. Section 2162.1 of the HIM-15 stated that losses in excess of the deductible or co-insurance were allowable costs, so long as the amount of insurance was consistent with sound management practices. Section 2162.5 of the HIM-15 recognized the allowability of deductibles, so long as they did not exceed 10% of the entity's net worth or $100,000.00 per provider. It stated also that where the deductible was set higher than those amounts (or all the risk was assumed), any losses exceeding the 10% amount or $100,000.00 would not be allowable as recognized costs.
The following finding made by the ALJ was rejected in AHCA's final order:
23. The general implication of these and other related sections of HIM-15 is that a prudent provider is expected to carry liability insurance or be self-insured. Thus, a provider will be reimbursed for the reasonable costs of liability insurance, any reasonable deductible, and any losses in excess of reasonable insurance coverage. These limitations on loss recovery or reimbursement are standards for purposes of determining whether an interim rate increase is allowable. These standards were in effect at the time [Appellants'] premiums increased. Thus, in order to comply with Medicaid's reimbursement standards, [Appellants] had to remain insured or self-insured. The choice of which type of insurance to utilize to meet the reimbursement standard is left to the provider. [Appellants] reasonably chose to insure through an insurance company. Since [Appellants were] required to make such a choice in order to comply or conform to Medicaid's reimbursement standards, [Appellants are] entitled to an interim rate increase.
Acknowledging the limitation that the interim rate provisions of the Plan recognized only such rates submitted within 60 days prior to the date of the interim rate request, the ALJ recommended limiting Appellants' rate increase to the increase in premiums incurred 60 days prior to their interim rate request.
To support the recommendation, the ALJ reached certain conclusions of law. As the petitioners, Appellants bore the burden of showing entitlement to the requested interim rate increase. Florida Dep't of Transp. v. J.W.C. Co., Inc., 396 So.2d 778, 788 (Fla. 1st DCA 1981). The following conclusions reached by the ALJ were rejected in AHCA's final order:
30. Section IV.J.2. of the Plan requires the changes creating the increased costs to be necessary for compliance with, "existing State or Federal rules, laws, or standards." The requirements of HIM-15 are clearly "standards," as that term is used in Section IV.J.2. of the Plan. In Alabama Hospital Association with Beasley, 702 F.2d 955 (11th Cir.1983) (Appendix), the Eleventh Circuit Court of Appeals discussed the "standards" for reimbursement set forth in 42 C.F.R. HIM-15 is a compilation and codification of 42 C.F.R., Medicare reimbursement principles, with are utilized by Medicare. In maintaining liability insurance for its facilities, [Appellants were] acting as a prudent provider in accordance with the standards set forth in HIM-15. Those standards require that a provider maintain liability or self-insurance or face the risk of being unreimbursed for losses.

*228 31. Because the parties agreed that [Appellants'] liability insurance premiums were allowable costs and the increase in those costs met the threshold criteria of Section IV.J.2. of the Plan, the fact that [Appellants] incurred increased costs to comply with recognized Medicaid reimbursement standards makes [Appellants'] request for an interim rate based on those increased costs allowable under the Plan.
AHCA rejected as erroneous the ALJ's conclusion of law that the requirements of the HIM-15 are Medicaid "standards," as that term is used in section IV.J.2. of the Plan. Instead, AHCA concluded that "[u]nlike a law, rule or regulation, HIM-15 does not impose a requirement upon providers to purchase insurance." In a footnote accompanying that conclusion, AHCA asserted that its conclusion was bolstered by Florida's enactment of an insurance requirement, effective July 1, 2000, i.e., after Appellants incurred their increased expenses and requested the interim rate increase. See § 409.908(2)(b), Fla. Stat. (2000). In rejecting the ALJ's conclusion that the HIM-15 constitutes a standard, AHCA contended that such a determination is infused with agency policy. While matters that are "susceptible of ordinary methods of proof" are factual matters to be determined by the ALJ, "matters infused with overriding policy considerations" are left to agency consideration. Baptist Hosp., Inc. v. State Dep't of Health & Rehab. Serv., 500 So.2d 620, 623 (Fla. 1st DCA 1986). However, an agency cannot avoid the requirement that it accept the ALJ's findings of fact by merely alleging them to be conclusions of law within the agency's area of discretion. Leapley v. Bd. of Regents, Florida State Univ. Syst., 423 So.2d 431 (Fla. 1st DCA 1982). Appellants argue that AHCA's attempt to characterize the term "standard" as one that is infused with agency policy and, therefore, subject to agency interpretation is improper. We agree. "Standard," as used in the Plan, is not a term of art in the Medicaid scheme; it has the commonly understood meaning of "[a]n acknowledged measure of comparison for quantitative or qualitative value; criterion; norm" or "[a] degree or level of requirement, excellence, or attainment." American Heritage Dictionary of the American Language 1256 (1973). Besides being a standard as determined by the ALJ, the HIM-15 is also a rule by incorporation; thus, under either definition, it sets requirements under section IV.J.2. of the Plan. Because competent substantial evidence demonstrated that Appellants were effectively required, under the HIM-15 guidelines, to maintain liability insurance, the ALJ's determination that the preponderance of the evidence proved that an unanticipated large increase in liability insurance premiums justified the approval of Appellants' interim rate request was proper and should not have been rejected by the agency.
Appellants contend that nowhere in the exhibits or testimony presented at the hearing did AHCA explain why the HIM-15 is not a standard. AHCA's witnesses merely stated that to be their position summarily, without setting forth an underlying reason. To the contrary, Appellants, through testimony and through the cross-examination of AHCA's witnesses, showed that in prior requests for an interim rate for increased liability insurance premiums by two other nursing homes, AHCA had set a precedent by allowing the interim rate. While attempting to excuse such a precedent as a "one-time event," a mere "judgment call," and a "mistake," AHCA's witnesses acknowledged that the agency had the power retroactively to correct such mistakes but had failed to do so. The *229 agency failed to explain why its policy had changed abruptly when applied to Appellants, despite the lack of any intervening change in the applicable provisions. AHCA's unexplained, inconsistent policies are contrary to established administrative principles and sound public policy. See Cleveland Clinic Florida Hosp. v. Agency for Health Care Admin., 679 So.2d 1237 (Fla. 1st DCA 1996); Health Care & Retirement Corp. of America, Inc. v. Dep't of Health & Rehab. Serv., 559 So.2d 665, 667-68 (Fla. 1st DCA 1990) (stating that when agency seeks to validate its action based on policy that is not recorded in rules or discoverable precedents, that policy must be established by expert testimony, documentary opinions, or other evidence appropriate to nature of issues involved, and agency must expose and elucidate its reasons for its discretionary actions with competent, substantial evidence on record). Although AHCA asserts that the HIM-15 is merely advisory in nature, the HIM-15 instructs providers how they must act for their costs to be considered prudent expenditures subject to reimbursement. AHCA misplaces its reliance on the proposition that during the period at issue here, liability insurance was not a required expense and the HIM-15 did not expressly mandate that every provider have such insurance. What the HIM-15 did state was that payment for losses or damage would not be considered allowable (and thus would not be reimbursed) if the provider did not carry liability insurance. Although the government did not specifically require providers to carry liability insurance at that time, clearly, the providers would suffer adverse consequences if they failed to do so. The effect of the provisions was such that a prudent provider operating under the reimbursement principles of the HIM-15 would carry liability insurance. To suggest otherwise is disingenuous.
To the extent that the ALJ's findings regarding the HIM-15 involve factual matters, AHCA erred by rejecting the facts that were supported by competent substantial evidence. § 120.57(1)(l), Fla. Stat. (2001). To the extent the ALJ's ruling construing the HIM-15 and its effects invokes a matter of law, AHCA erred in rejecting it without satisfying the requirements of section 120.57(1)(l), which states:
The agency may adopt the recommended order as the final order of the agency. The agency in its final order may reject or modify the conclusions of law over which it has substantive jurisdiction and interpretation of administrative rules over which it has substantive jurisdiction. When rejecting or modifying such conclusion of law or interpretation of administrative rule, the agency must state with particularity its reasons for rejecting or modifying such conclusion of law or interpretation of administrative rule and must make a finding that its substituted conclusion of law or interpretation of administrative rule is as or more reasonable than that which was rejected or modified. Rejection or modification of conclusions of law may not form the basis for rejection or modification of findings of fact. The agency may not reject or modify the findings of fact unless the agency first determines from a review of the entire record, and states with particularity in the order, that the findings of fact were not based upon competent substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law. The agency may accept the recommended penalty in a recommended order, but may not reduce or increase it without a review of the complete record and without stating with particularity its reasons *230 therefor in the order, by citing to the record in justifying the action.
Accordingly, we REVERSE the final order and REMAND with instructions to AHCA to enter an order adopting the ALJ's findings and conclusions in support of granting the interim rate increase.
ERVIN and BOOTH, JJ., CONCUR.