938 So.2d 535 (2006)
J.M., Appellant,
v.
FLORIDA AGENCY FOR PERSONS WITH DISABILITIES, Appellee.
Case No. 1D06-0183.
District Court of Appeal of Florida, First District.
Opinion filed August 8, 2006.
Alan I. Mishael, Esquire of Alan I. Mishael, P.A., Miami, for Appellant.
Charlie Crist, Attorney General, and Charles M. Fahlbusch, Senior Assistant Attorney General, Fort Lauderdale, for Appellee.
BENTON, J.
J.M. appeals a "Final Order Denying Petition for Administrative Hearing" in which the Agency for Persons with Disabilities (APD) ruled that J.M. was not entitled to a hearing under section 120.57(1), Florida Statutes (2005), to resolve a dispute arising under section 393.0651, Florida Statutes (2005), stating:
The Office of Appeal Hearings, administratively located [not within the Agency for Persons With Disabilities but] within the Department of Children and Families, was created to provide administrative review of the denial, suspension, or reduction of benefits in those medical assistance and social services programs where a due process proceeding is mandated by federal law. The DD/HCBS Medicaid waiver, while allowing Florida to provide specific services under different circumstances than would be available under State Plan Medicaid, is nonetheless a Medicaid program authorized under Title XIX of the Social Security Act. The DD/HCBS waiver is, therefore, included within the section 120.80(7) exemption, and a Fair Hearing [in contradistinction to a section 120.57 hearing] is the appropriate forum to consider petitioner's challenge to the Agency's decision to reduce his benefits.
We reverse APD's order with directions that J.M. be granted a section 120.57(1) hearing either before APD's director (the agency head) or before "an administrative law judge assigned by the [D]ivision [of Administrative Hearings]." 120.57(1)(a), Fla. Stat. (2005).
An autistic and mentally retarded child, J.M. lives in a group home where he receives benefits under a community-based Medicaid[1] waiver program, which APD administers. J.M. was receiving eighteen hours of "residential habilitation" daily when a private vendor[2] under contract to APD reviewed J.M.'s file. Thereafter, APD notified J.M.'s support coordinator that it would approve residential habilitation for J.M. for ten hours a day only. The substance of the parties' ensuing dispute is, J.M.'s petition alleges, factual: How many hours of "residential habilitation" does J.M. require?

I.
We have jurisdiction to review final agency action. See 120.68(1), Fla. Stat. (2005) ("A party who is adversely affected by final agency action is entitled to judicial review."). As is plain from its tenor (and as APD's counsel confirmed at oral argument), the order under review was intended as the last action APD would take in J.M.'s case. Our jurisdiction is, moreover, routinely invoked to review agency orders denying section 120.57 hearings. See, e.g., Gopman v. Dep't of Educ., 908 So. 2d 1118, 1120-21, 23 (Fla. 1st DCA 2005) (reviewing denial of a request for formal hearing under section 120.57 where agency asserted other, statutorily prescribed hearing procedures sufficed); Sickon v. Sch. Bd. of Alachua County, 719 So. 2d 360, 361 (Fla. 1st DCA 1998) (reviewing denial of a request for formal hearing under section 120.57); Yunker v. Univ. of Fla., 602 So. 2d 557, 557 (Fla. 1st DCA 1992) (same). See also Fla. R. App. P. 9.190(b)(2)(2006).
The present case arrives in a very different procedural posture than that in which Ford v. Agency for Persons with Disabilities, 30 Fla. L. Weekly D2701 (Fla. 4th DCA Nov. 30, 2005), came to the Fourth District. In Ford, final agency action had not been taken: administrative proceedings were ongoing within the Department of Children and Family Services, when Ford filed a motion to transfer the case to the Division of Administrative Hearings. An interlocutory order denied Ford's motion for transfer. That interlocutory order (and perhaps the notice of a hearing within the Department of Children and Family Services) became the subject of Ford's appeal. The Fourth District ruled that it did not have jurisdiction to review the denial of the request to transfer because the order was interlocutory and contemplated further proceedings within the Department of Children and Family Services that might eventuate in an order that would render Ford's petition for review of intermediate agency action moot. Ford had applied directly and exclusively to the Department of Children and Family Services for relief, and never filed a petition with, or obtained any order from, APD.
In contrast, J.M. exhausted the possibility of administrative remedies he (unlike Ford) sought at APD. J.M. presumably had the same opportunity to litigate before a hearing officer at the Department of Children and Family Services as Ford,[3] but any possibility that J.M. might obtain a favorable order from another agency (the Department of Children and Family Services)[4] does not render the unfavorable order he in fact received from APD interlocutory. APD has announced that it will take no further action in the case, unless the order under review is reversed. Administrative proceedings within APD concluded when APD's final order denied J.M.'s request for a section 120.57 hearing.

II.
"The Administrative Procedure Act presumptively governs the exercise of all authority statutorily vested in the executive branch of state government." Gopman, 908 So. 2d at 1120. An agency within the meaning of the Administrative Procedure Act, APD is responsible for administering services related to developmental disabilities as set forth in chapter 393, Florida Statutes. See 20.197(2), Fla. Stat. (2005) ("The agency shall be responsible for the provision of all services provided to persons with developmental disabilities pursuant to chapter 393, including the . . . programmatic management of Medicaid waivers established to provide services to persons with developmental disabilities."). In particular, APD is responsible for creating an individual support plan for each of its clients, see 393.0651, Fla. Stat. (2005), and for annual review of these plans. See 393.0651(7), Fla. Stat. (2005). These obligations encompass responsibility and authority for making determinations of eligibility for clients to receive developmental disability services. See 393.065(1), Fla. Stat. (2005).
APD's original determination that J.M. was eligible for developmental disability services is not at issue. After furnishing such services initially, APD conducted a review  acting through a physician employed by Maximus (with which APD contracts to review support plans to ascertain which services are and remain medically necessary)  and then completed a "Determination of Reconsideration Review," adopting the reduction in J.M.'s residential habilitation hours Maximus proposed. In response to the Determination of Reconsideration Review and the proposed reduction, J.M. filed his request for a formal hearing with APD, asserting that his substantial interests were affected by proposed agency action, and that the validity of the proposed agency action depends on disputed issues of material fact.
Any person substantially affected by an APD decision, concerning eligibility for developmental disability services initially, or concerning subsequent changes in a support plan regarding such services arising from annual reviews thereafter, has the right to a hearing pursuant to section 120.57.
Any client, or any parent of a minor client, or guardian, authorized guardian advocate, or client advocate for a client, who is substantially affected by the client's initial family or individual support plan, or the annual review thereof, shall have the right to file a notice to challenge the decision pursuant to ss. 120.569 and 120.57. Notice of such right to appeal shall be included in all support plans provided by the agency.
393.0651(8), Fla. Stat. (2005) (emphasis added). With respect to initial eligibility determinations at least, the statute also provides: "Any applicant determined by the agency to be ineligible for developmental services has the right to appeal this decision pursuant to ss. 120.569 and 120.57." 393.065(3), Fla. Stat. (2005).
Here, as below, APD contends that, these clear statutory directives[5] notwithstanding, J.M. is not entitled to a section 120.57(1) hearing because the exemption from the obligation to conduct formal administrative hearings set out in section 120.80(7), Florida Statutes, applies. The language creating the exemption provides:
Notwithstanding s. 120.57(1)(a), http://web2.westlaw.com/find/default.wl?DB=1000006&DocName=FLSTS120%2E57&FindType=L&ReferencePositionType=T&ReferencePosition=SP%3B9f800000f2221&AP=&fn=_top&utid=%7b7828731A-D52A-41CC-9609-FCCE915A4466%7d&rs=WLW6.05&mt=Florida&vr=2.0&sv=Splithearings conducted within the Department of Children and Family Services in the execution of those social and economic programs administered by the former Division of Family Services of the former Department of Health and Rehabilitative Services prior to the reorganization effected by chapter 75-48, Laws of Florida, need not be conducted by an administrative law judge assigned by the division.
120.80(7), Fla. Stat. (2005). We need not decide in the present case the precise scope of the exemption section 120.80(7) creates, because chapter 393 unambiguously calls for administrative hearings pursuant to section 120.57 in cases like J.M.'s. We therefore leave for another day mapping the exemption's exact contours.
The specific statutes in chapter 393 necessarily control over any general exemption in section 120.80(7), even assuming the exemption provided in 120.80(7) could be read to apply to APD. See 393.065-.0651, Fla. Stat. (2005). See also, e.g., Stoletz v. State, 875 So. 2d 572, 575 (Fla. 2004) ("`[A] specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms.'") (quoting McKendry v. State, 641 So. 2d 45, 46 (Fla. 1994)).
The exemption that section 120.80(7) creates applies generally to "http://web2.westlaw.com/find/default.wl?DB=1000006&DocName=FLSTS120%2E57&FindType=L&ReferencePositionType=T&ReferencePosition=SP%3B9f800000f2221&AP=&fn=_top&utid=%7b7828731A-D52A-41CC-9609-FCCE915A4466%7d&rs=WLW6.05&mt=Florida&vr=2.0&sv=Splithearings conducted within the Department of Children and Family Services in the execution of those social and economic programs administered by the former Division of Family Services of the former Department of Health and Rehabilitative Services," 120.80(7), Fla. Stat. (2005), not specifically to services for the developmentally disabled or, indeed, to the APD at all. Chapter 393, on the other hand, does specifically apply to programs for the developmentally disabled and to the Medicaid waiver program that APD is responsible for administering for the benefit of J.M. and others. Chapter 393 specifically provides for hearings pursuant to section 120.57, and authorizes no exceptions.
The rule that "when two statutes are in conflict, the later promulgated statute should prevail as the last expression of legislative intent," McKendry, 641 So. 2d at 46, also supports this result. The first time chapter 393 incorporated a provision entitling an applicant for developmental disability services to a hearing pursuant to section 120.57, was in 1988, see Ch. 88-398, 7, at 2337, Laws of Fla. (creating section 393.065(3), Florida Statutes (1988)), while the section 120.80(7) exemption can be traced back to the Administrative Procedure Act of 1974. See Ch. 74-310, 1, at 961, Laws of Fla.[6] Section 393.0651, Florida Statutes, was originally enacted in 1989, and includes the right to a hearing pursuant to section 120.57. See Ch. 89-308, 10, at 2012-14, Laws of Fla. Because the statutes providing the right to a hearing pursuant to section 120.57 were enacted after the exemption now found in 120.80(7) was created, the statutes providing for section 120.57 hearings control. Section 120.80(7) has no application here.

III.
APD must grant a formal hearing pursuant to section 120.57(1) when material facts are in dispute and an applicant or client is "determined by the agency to be ineligible for developmental services," 393.065(3), Fla. Stat. (2005), if the applicant or client "is substantially affected by the . . . initial family or individual support plan, or the annual review thereof." 393.0651(8), Fla. Stat. (2005).
Reversed and remanded.
BROWNING, J., CONCURS; ERVIN, J., CONCURS WITH OPINION.
NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING AND DISPOSITION THEREOF IF FILED.
ERVIN, J., concurring.
I concur for the purpose of separately expressing my disagreement with what appears to be the policy position of the Agency for Persons with Disabilities (APD), which denies developmentally disabled persons the right to a section 120.57 hearing, despite language in section 393.065(3),[7] placed within the Developmental Disabilities Prevention and Community Services Act, clearly providing them such relief. As explained in the majority's opinion, recourse to chapter 120 remedies was first conferred in 1988, through the enactment of section 393.065; however, the APD or its predecessors have continued to rely indiscriminately on the section 120.80(7) exemption since its creation in 1974. I think it reasonably clear that the more general provisions of section 120.80(7) cannot trump the later enacted and more specific provisions of sections 393.065(3) and 393.125, authorizing resort to section 120.57.
Having said the above, it is not altogether clear to me whether the legislature intended that chapter 120 processes should be afforded to resolve a dispute such as that in the present case where the level of residential habilitation care is reduced, rather than denied altogether. Section 393.065(3), Florida Statutes (2005), explicitly states that an "applicant determined by the agency to be ineligible for developmental services has the right to appeal this decision pursuant to ss. 120.569 and 120.57." (Emphasis added.) In the case at bar J.M. availed himself of the procedure supplied in both sections 393.065 and 409.285, Florida Statutes (2005). The latter, part of chapter 409 relating to social and economic assistance, apparently allows an applicant a fair hearing[8] before the Department of Children and Families (DCF). I find it equally unclear why the legislature would choose to afford separate avenues of relief to one denied developmental care.
The DCF is authorized to conduct a statutorily unspecified type of hearing if an application for public assistance "is denied in whole or in part, or if an assistance payment is modified or canceled." § 409.285(1). It appears that the resumption in developmental service J.M. sought is precisely the kind of public assistance section 409.285 was designed to address. For example, section 409.905(15), Florida Statutes (2005), provides that the Agency for Health Care Administration "may pay for health-related care and services provided on a 24-hour-a-day basis by a facility licensed and certified as a Medicaid Intermediate Care Facility for the Developmentally Disabled." If it was the legislature's intent that disputes arising from reductions in developmental services would be restricted solely to fair hearings, its purpose has not been expressed with the clarity one should reasonably expect.
As it now stands, an applicant denied developmental services has the option of seeking either a section 120.57 proceeding, accorded by sections 393.065 and 393.125, or a fair hearing as authorized by section 409.285. Although it may be unclear whether the legislature's purpose was to create two such alternative avenues of relief, it is obvious that the agency can no longer rely on section 120.80(7) for the theory that a fair hearing is the exclusive means by which an aggrieved applicant for developmental services may seek resolution of a disputed denial.
NOTES
[1] In 1981, Congress created the Home and Community-Based Waiver Program, which provides that people who would otherwise be cared for in nursing homes or other institutions can receive services in their own homes or in home-like settings. See Cramer v. Chiles, 33 F. Supp. 2d 1342, 1347-48 (S.D. Fla. 1999) (discussing the history of the waiver program). See also 42 U.S.C. 1369n(c)(2005). Under the program, states can apply for waivers which excuse compliance with particular statutory and regulatory provisions and permit states to implement waiver programs for developmentally disabled people living at home or in a community-based program (among other waiver programs not related to developmental disabilities). These waivers make Medicaid funds available for certain caregivers who would have been ineligible otherwise. See Cramer, 33 F. Supp. 2d at 1348. Florida was first approved for the waiver program in 1982 for day treatment services. In 1992, Florida was approved for a comprehensive waiver program. See id. For a good discussion of Medicaid waiver programs for the developmentally disabled in Florida, see Russell v. Agency for Persons With Disabilities, 926 So. 2d 601, 602-603 (Fla. 1st DCA 2006).
[2] According to APD's website,

APD began contracting with Maximus Inc. to conduct Prior Service Authorizations (PSA) for select services (e.g., residential habilitation) and high cost plans. The purpose of the PSA review process is to ensure that individuals on the waiver receive medically necessary services at the appropriate intensity, frequency, and duration. . . .
http://apd.myflorida.com/about/.
[3] J.M.'s support coordinator completed a "Developmental Disabilities Hearing Request" form requesting a hearing on the reduction in J.M.'s residential habilitation, and, on receipt of the form, the Department of Children and Family Services sent J.M. a notice of fair hearing scheduling a hearing before a hearing officer at the Department of Children and Family Services. (The hearing has since been continued.) Unlike Ford, however, J.M. took the additional step of filing a petition for administrative hearing with APD seeking a section 120.57 hearing. APD's order denying that petition  not an interlocutory order the Department of Children and Family Services entered  is now before us.
[4] APD argues that because it is "housed within the Department of Children and Family Services for administrative purposes," the Department of Children and Family Services has the authority to hold hearings regarding determinations of need for developmental disability services. § 20.197, Fla. Stat. (2005) ("There is created the Agency for Persons with Disabilities, housed within the Department of Children and Family Services for administrative purposes only."). We reject APD's argument, which ignores the rest of the statute, specifically: "The director of the agency [APD] shall be the agency head for all purposes. . . ." Id. ("The agency shall be a separate budget entity not subject to control, supervision, or direction by the Department of Children and Family Services in any manner, including, but not limited to, personnel, purchasing, transactions involving real or personal property, and budgetary matters.").

APD is not the only agency which is not subject to control or supervision by the department to which it is attached. See 20.50, Fla. Stat. (2005) (providing that the Agency for Workforce Innovation is "within" the Department of Management Services, but that it is a separate budget entity, its director is the agency head for all purposes, and that the agency is not "subject to control, supervision, or direction" by the department); 106.24(1)(a), Fla. Stat. (2005) (providing that the Florida Elections Commission is "within" the Department of Legal Affairs, but that it is a separate budget entity, its director is the agency head for all purposes, and that the agency is not "subject to control, supervision, or direction" by the department); 120.65(1), Fla. Stat. (2005) (providing that the Division of Administrative Hearings is "within" the Department of Management Services, but that it is a separate budget entity, its director is the agency head for all purposes, and that the agency is not "subject to control, supervision, or direction" by the department); 420.504(1), (3), Fla. Stat. (2005) (placing the Florida Housing Finance Corporation "within" the Department of Community Affairs, but stating that the corporation is not a department, is a separate budget entity, and is not "subject to control, supervision, or direction" by the department); 443.012(1), (5), Fla. Stat. (2005) (providing that the Unemployment Appeals Commission is "created within" the Agency for Workforce Innovation, but that it not "subject to control, supervision, or direction" by the agency). No party raises any issue under article IV, section 6 of the Florida Constitution.
APD's argument implies, for example, that the Secretary of Management Services is authorized to hold administrative hearings, in lieu of the Division of Administrative Hearings, because the Division of Administrative Hearings is housed within the Department of Management Services. See 20.22(1), Fla. Stat. (2005) (providing that the Secretary of Management Services is the agency head of the Department of Management Services). But APD has not called our attention to any case approving an administrative hearing's being conducted by a department to which a separate agency is attached  rather than by the separate agency's head or an administrative law judge.
[5] "When the statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent." Daniels v. Fla. Dep't of Health, 898 So. 2d 61, 64 (Fla. 2005).
[6] Chapter 74-310 created section 120.57, which required formal proceedings before the agency head or a hearing officer of the Division of Administrative Hearings. Among other proceedings originally exempted were "hearings within the division of family services of the department of health and rehabilitative services." Ch. 74-310, 1, at 961, Laws of Fla. Substantial revisions were made to the Administrative Procedure Act in 1996, and all exemptions from the requirements of section 120.57 were moved to section 120.80. See Ch. 96-159, 41, at 204-10, Laws of Fla. (creating section 120.80, Florida Statutes (1996)).
[7] Section 393.125, Florida Statutes (2005), adopted in 1989, similarly furnishes a 120.57 hearing to any developmental services applicant whose substantial interests are affected by the agency.
[8] State plans are required by 42 U.S.C. § 1396a(a)(3) of the federal Medicaid Act to notify applicants of their right to a fair hearing following any action taken by the state agency which affects the applicant's claim. A fair hearing, moreover, means that it "must meet the due process standards set forth in Goldberg v. Kelly, 397 U.S. 254 (1970)." 42 C.F.R. § 431.205(d). The federal procedure is mirrored by Florida Administrative Code Procedure Rule 65-2.042.