965 So.2d 154 (2007)
James COURTS, Appellant,
v.
AGENCY FOR HEALTH CARE ADMINISTRATION, Appellee.
No. 1D06-0012.
District Court of Appeal of Florida, First District.
July 31, 2007.
*155 Cindy Huddleston and Anne Swerlick of Florida Legal Services, Inc., Tallahassee; Andrea Costello of Southern Legal Counsel, Inc., Gainesville, for Appellant.
Tracy Lee Cooper, Assistant General Counsel, Agency for Health Care Administration, John Slye, Acting General Counsel, Department of Children and Families, and Garnett Chisenhall, Assistant Attorney General, Tallahassee, for Appellee.
VAN NORTWICK, J.
James Courts appeals a hearing officer's final order upholding the action of the Florida Agency for Health Care Administration (AHCA) which eliminated his previously awarded two weeks of 24-hour companion care and denied his request for an additional two weeks of 24-hour companion care services provided to him under a Medicaid waiver program. Appellant contends that AHCA erred by refusing to provide the 24-hour care that it had provided in the past without providing an adequate explanation for the change in policy. We agree. When AHCA substantially reduced the companion care provided to appellant, contrary to the requirements of Florida law it changed its existing non-rule based policy without adequate explanation and without the adoption of an agency rule. Accordingly, under this court's precedent in Brookwood-Walton County Convalescent Center v. Agency for Health Care Administration, 845 So.2d 223, 229 (Fla. 1st DCA 2003), we reverse the final order under review and remand for further proceedings consistent with this opinion.
"The Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. § 1396, is a cooperative federal-state program designed to allow states to receive matching funds from the federal government to finance necessary services to qualified low-income individuals." Esteban v. Cook, 77 F.Supp.2d 1256, 1259 (S.D.Fla.1999); see also Russell v. Agency for Persons with Disabilities, 929 So.2d 601, 602 (Fla. 1st DCA 2006); Harris v. McRae, 448 U.S. 297, 308-09, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980). "[T]he purpose of Congress in enacting Title XIX was to provide federal assistance for all legitimate state expenditures under an approved Medicaid plan." Harris, 448 U.S. at 308-09, 100 S.Ct. 2671 (citations omitted). The guidelines for the Medicaid program are set forth in the federal statutes and regulations and are adopted into specific state laws and rules in each state. 42 U.S.C. § 1302. In each *156 state, a "single state agency" is responsible for administering the Medicaid program. 42 C.F.R. § 431.10. In Florida, AHCA is designated as the Florida state agency authorized to make payments to qualified providers for medical assistance and related services on behalf of eligible individuals. See § 409.902, Fla. Stat. (2005); see generally, Russell, 929 So.2d at 602-03.
Under the Home and Community Based Waiver Program, a part of Medicaid, individuals who would otherwise be cared for in nursing homes or other institutions can receive services in their own home or home-like settings. J.M. v. Fla. Agency for Persons with Disabilities, 938 So.2d 535, 537 n. 1 (Fla. 1st DCA 2006); see also Cramer v. Chiles, 33 F.Supp.2d 1342, 1347-49 (S.D.Fla.1999)(discussing history of waiver program). The Medicaid Act provides that states may apply to the Centers for Medicaid and Medicaid Services (CMS), a division of the United States Department of Health and Human Services, to participate in waiver programs which permit states to include, as medical assistance, the cost of home or community-based services without which individuals could not remain in their homes and would be institutionalized. 42 U.S.C. § 1396n; 42 C.F.R. § 435.217.
In chapter 381, Florida Statutes (2005), the legislature has expressed Florida's public policy with respect to providing community-based services to individuals, like appellant, who have sustained a brain or spinal cord injury. The Department of Health (DOH) administers "a coordinated rehabilitation program" designed to allow residents with moderate-to-severe brain or spinal cord injuries "to return to an appropriate level of functioning in their community." § 381.7395. As part of its duties, DOH is directed to implement "a program of long-term community-based supports and services for individuals who have sustained traumatic brain or spinal cord injuries." § 381.795(2). The legislative purpose "is to prevent inappropriate residential and institutional placement of these individuals, and promote placement in the most cost-effective and least restrictive environment." § 381.795(1).
Presumably to carry out the legislative intent to aid individuals with brain and spinal cord injuries, Florida participates in a Medicaid waiver program which would allow these individuals to remain in their homes rather than be institutionalized. Pertinent to this appeal, the record here reflects that AHCA applied to renew its participation in the Brain and Spinal Cord Injury Waiver Program (BSCIP) effective on July 1, 2002. The waiver was to remain in effect until June 30, 2007. In its waiver application, AHCA elected to provide "adult companion services," which are defined in the waiver application, as follows:
Non-medical care, supervision and socialization, provided to a functionally impaired adult. Companions may assist or supervise the individual with such tasks as meal preparation, laundry and shopping, but do not perform these activities as discrete services. The provision of companion services does not entail hands-on nursing care. Providers may also perform light housekeeping tasks which are incidental to the care and supervision of the individual. This service is provided in accordance with a therapeutic goal in the plan of care, and is not purely diversional in nature.
AHCA did not elect to provide "respite care," which the application defined as "[s]ervices provided to individuals unable to care for themselves; furnished on a short-term basis because of the absence or need from relief of those persons normally providing the care." The record reflects that DOH administers the BSCIP waiver *157 program, including notifying participants of any adverse actions.
The appellant is a 59-year-old male who was rendered a quadriplegic in an accident in 1995. The appellant is not capable of moving himself from his home without assistance and, therefore, cannot be left alone at home due to the risk of an emergency such as a fire. The appellant also requires assistance with personal hygiene, eating, repositioning, taking medication, and other daily activities. It is undisputed that, without assistance with these activities, the appellant would not be able to live in his home and would be forced to enter an institution.
Appellant has been enrolled in the BSCIP waiver program since 2001. The appellant's care plan for the plan year starting on July 1, 2002, and ending June 30, 2003, provided him with 50 hours of companion care per week for 52 weeks plus 236 hours of companion care on an as needed basis. The appellant testified at the hearing that the extra 236 hours were provided so that his wife could care for her terminally ill father in Pennsylvania. In the special funding request for the additional hours of companion care, the appellant's case manager found that the extra hours were "essential to ensure the client's health, and/or is necessary to prevent regression, and/or inappropriate or more costly placement or institutionalization" and that the services were "the most efficient and effective means . . . to resolve the situation." The appellant's care plan for the July 1, 2003, to June 30, 2004, plan year was the same. The appellant's plan for the July 1, 2004, to June 30, 2005, plan year provided 50 hours of companion care per week for 52 weeks plus 20 hours of additional companion care as needed per month. Prior to signing this plan, the appellant requested an additional two weeks of 24-hour as-needed care.
Contrary to the construction of the Medicaid waiver by AHCA and DOH for the plan years 2002/2003, 2003/2004 and 2004/2005, on April 29, 2005, DOH advised appellant by letter that his plan was not in compliance with state Medicaid guidelines because those guidelines only permit six hours of companion care per day and do not permit "around the clock care." Thus, AHCA reduced appellant's companion care from 50 hours per week to 42 hours per week, eliminated the two weeks of 24-hour as-needed care, and denied his request for an additional two weeks of 24-hour care. In a subsequent letter, DOH advised appellant that these hours were "not medically necessary, and respite care is not covered under the Traumatic Brain and Spinal Cord Injury Waiver." Appellant requested a Medicaid fair hearing pursuant to 42 C.F.R. § 431.200. See also Fla. Admin. Code R. 65-2.042.
At the hearing, Dr. Irvin, the appellant's doctor, testified and submitted a letter in support of his testimony. He wrote that in the past when the appellant was unable to obtain home care in his wife's absence, the appellant ended up in hospitals and nursing homes and suffered severe deterioration of his condition. While at a nursing home on such an occasion, the appellant developed severe decubitis ulcers which caused sepsis and a several-week hospitalization. Dr. Irvin testified that the appellant's risk of infection and other complications increases when he is institutionalized or hospitalized and that when he gets an infection, "he gets sick very fast and has to be brought into the Emergency Room . . . he goes from being fairly healthy for his condition to extremely ill very fast." He did not testify as to how often the appellant suffered infections, only that the risk increased. After testifying about the dangers posed by hospitalization and institutionalization, the doctor *158 was asked if he had anything to add as to why the services at issue were "medically necessary." He testified that "if we are going to keep him out of the hospitals and . . . nursing homes and keep him at home he is going to require supervision and help. . . ."
Mary Brown, employed by DOH as a regional supervisor of the BSCIP waiver program, supervises appellant's case manager. She testified that she was aware that the appellant's plans had in the past provided 24-hour companion care and that those plans had been approved. She testified that she reviewed the plan at issue and forwarded it to the program administrator, Ms. Russell, for approval. She also testified that she was instructed by Ms. Russell to "bring the plan into compliance" by eliminating the 24-hour care. She testified she was told that the guidelines do not provide for 24-hour respite care.
At the hearing, the deposition of Ms. Russell, the DOH program administrator responsible for the BSCIP waiver program, was introduced into evidence. She testified that DOH is responsible for the fiscal integrity of the program and that AHCA is responsible for promulgating rules related to the waiver program. She was then in the process of preparing a handbook that would be promulgated into a rule.[1] She expressed her opinion that the maximum amount of services that an individual could receive under the waiver was six hours per day. At the time of the hearing, this limit was in effect and had been put into the AHCA billing system.
The hearing officer entered a final order affirming the denial and ruling that, although there was at present "no limit on the amount of [companion services] hours an individual can receive," because appellant's 24-hour care was being used to allow his wife to attend to family matters, those services constituted respite care which is not approved under the waiver application. This appeal followed.
As we read the record before us, it is undisputed that, with respect to the care plan authorized for appellant, starting in the 2002/2003 plan year and through the proposed 2004/2005 plan year, AHCA interpreted the definition of "companion services" under the BSCIP waiver to include 50 hours of companion care to appellant per week for 52 weeks, plus an additional 236 hours of companion care on an as-needed basis when appellant's wife was required to be out-of-town to care for her ill father. Nothing in the agency's interpretation of the scope of the companion care provided appellant is contrary to the definition of "companion services" contained in the waiver application. Simply contending that the past interpretation was a mistake and that AHCA had "changed its mind," see Cleveland Clinic Florida Hospital v. Agency for Health Care Administration, 679 So.2d 1237, 1239 (Fla. 1st DCA 1996), is insufficient. Further, it is undisputed in this record that the additional companion care hours were "essential to ensure [appellant's] health, and/or . . . necessary to prevent regression, and/or . . . more costly placement or institutionalization." Although AHCA asserts that the change to limit companion care to six hours per day was made to assure compliance with the waiver application, and that DOH's previous construction was mistaken, the record reflects that the change was made because of billing limits *159 in the agency's computer system and in response to budgetary problems at DOH.
While AHCA's decision with respect to appellant's plan under the BSCIP waiver is not "an agency statement of general policy," and thus not a "rule" as defined in section 120.52(15), Florida Statutes (2005), in interpreting the definition of "companion services" under the waiver application to include the companion care authorized appellant from June 2002 through June 2005, AHCA was applying an agency policy. When in 2005 AHCA changed its interpretation of "companion services" as applied to appellant, it abruptly changed its policy without explaining the basis of its changed policy.
In Brookwood-Walton County Convalescent Center v. Agency for Health Care Administration, AHCA denied two Brookwood nursing homes interim rate increases which would have allowed recovery of increased liability insurance premiums. The decisions were based upon AHCA's interpretation of provisions in a Medicaid health insurance manual. 845 So.2d at 228. As to the Brookwood institutions, AHCA construed the provisions in the Medicare manual as not imposing a requirement upon nursing homes to purchase liability insurance. AHCA determined that such construction constituted a "standard" for reimbursement under Medicaid and supported denial of an interim rate increase. Id. Brookwood introduced evidence, however, that AHCA had granted the requests of other nursing homes for interim rate increases as a result of increased liability insurance premiums. Id. Although AHCA attempted to justify such inconsistent precedent as a "one time event" and a "mistake," id., this court reversed AHCA's order, explaining that the agency's "unexplained, inconsistent policies are contrary to established administrative principles and sound public policy." Id. at 229. Further, this court has held that, if an agency changes a non-rule-based policy, it must either explain its reasons for its discretionary action based upon expert testimony, documentary opinions, or other appropriate evidence, Health Care and Retirement Corp. of America, Inc. v. Department of Health and Rehabilitative Services, 559 So.2d 665, 667-68 (Fla. 1st DCA 1990), or it must implement its changed policy or interpretation by formal rule making. Cleveland Clinic, 679 So.2d at 1242.
We believe that our holdings in Cleveland Clinic and Brookwood-Walton are consistent with the legislature's limitation on agency flexibility and discretion and enhancement of agency accountability and regulatory certainty underlying the 1996 amendments to chapter 120. § 120.54(1)(a), Fla. Stat. (2005)(requiring rule making whenever it is "feasible and practical"); see Dep't of Highway Safety & Motor Vehicles v. Schluter, 705 So.2d 81, 86 (Fla. 1st DCA 1998); see generally W. Hopping, L. Sellers & K. Wetherall, Rule Making Reforms and Non-Rule Policies: A Catch 22 for State Agencies?, 71 Fla. Bar. J. 20, 24-26 (1997). In short, under chapter 120 "an agency cannot change its standards at the personal whim of a bureaucrat." James P. Rhea & Patrick L. Imhof, An Overview of the 1996 Administrative Procedure Act, 48 U. Fla. L.Rev. 1, 4 (1996).
As appellant argues, there is nothing in the record here which indicates that either the Medicaid law or regulations have changed with regard to the definition of companion care. AHCA asserts that the care now denied appellant is "respite care," which was not authorized under the BSCIP waiver. For the 2002/2003, 2003/2004, and 2004/2005 plan years, however, the care now denied appellant was considered companion services under AHCA's interpretation of the BSCIP waiver, and the record contains no evidence *160 that CMS believed that the Florida program was out of compliance with the waiver obligations related to the provision of companion care. It is clear that AHCA's decision in 2005 to deny the appellant's benefits, when it had approved those same benefits since 2002, was simply a change in its established policy. Further, it is undisputed in this record that this policy change was made without rule-making or explication in the record. See Cleveland Clinic, 679 So.2d at 1241-42 (absent a "good reason why the agency's abrupt change of established policy, practice and procedure should be sanctioned," the agency must implement changed interpretations through rule-making) (citation omitted); Exclusive Inv. Mgm't & Consultants, Inc. v. Agency for Heath Care Admin., 699 So.2d 311 (Fla. 1st DCA 1997)(refusing to uphold AHCA's requirement that Medicaid providers contract with the Alcohol, Drug Abuse and Mental Health (ADM) program because, among other grounds, such construction was an unpromulgated change from AHCA's prior policy). AHCA's failure to explicate its unpromulgated policy at the hearing is even more egregious when AHCA changes the application of its policy in a particular case. Brookwood-Walton County, 845 So.2d at 229.
Since it is clear that the AHCA policy change was made as to appellant without rule-making or an explication of the new policy during the hearing process, the change is contrary to law. Brookwood-Walton County, 845 So.2d at 229; Cleveland Clinic, 679 So.2d at 1241-42. Thus, we reverse and remand with instructions to reinstate a care plan to provide appellant 50 hours per week of companion care and 236 hours of as-needed 24-hour care.
WOLF and LEWIS, JJ., concur.
NOTES
[1] It is undisputed that, at the time of the hearing in this proceeding, AHCA had not promulgated any rules regarding the administration of the BSCIP program. Subsequently, AHCA adopted rule 59G-13.130, requiring compliance with the "Florida Medicaid Traumatic Brain and Spinal Cord Injury Waiver Services Coverage and Limitations Handbook, April 2006" (Handbook) effective May 31, 2006.